CURTISS v. STORRS.   See Case No. 1,291.

CURTIUS (WILSON v.).   See Case No. 17,800.

---

## Case No. 3,507.

### CURTS et al. v. CISNA et al.

[7 Biss. 260;[1] 8 Chi. Leg. News, 402.]

Circuit Court, W. D. Wisconsin. Aug., 1876.

AGENT CANNOT ACQUIRE ADVERSE TITLE — BONA FIDE PURCHASER — MUST HAVE OBTAINED THE LEGAL ESTATE.

1. An agent to pay taxes on the lands of his principal, cannot acquire a valid tax deed on the same when they have been sold for taxes.

2. Where an agent had acquired a tax deed on the lands of his principal, and had contract-

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

ed to sell the same to a third party, who had no notice of the fraud, but his agent, in making the purchase, had such knowledge, and such purchaser had received a contract only for a deed, and had paid two-thirds of the purchase-money, held, that the fact that the agent of such purchaser had had knowledge of such fraud, was not sufficient to affect his principal, unless the facts and circumstances were such as to show that he had the same in mind at the time of the transaction of the purchase; but that the right of such purchaser to call for a conveyance from the fraudulent grantee in the tax deed, was an equitable right merely, and that the right of the original owner being the oldest equity, must prevail.

3. A purchaser under a contract for a deed, though he may have paid all of the purchase-money is not protected as a bona fide purchaser; nor, if he has not obtained a conveyance of the legal estate, can he insist on the re-payment of what he has paid on the contract as a condition of surrendering his claim. He must rely on the responsibility of his vendor.

[See Baker v. Whiting, Case No. 787.]

4. A purchaser without notice will not be protected against the superior equity of an adverse claim, and where a party had purchased what in reality was only a tax title, he must be held as having assumed the burden of maintaining that such tax title had extinguished the patent title, and which, as to him, was an adverse one.

In equity.

Gregory & Pinney, for complainants.

Tyler & Dickinson, R. J. McBride, and B. F. French, for defendants.

Before DAVIS, Circuit Justice, and HOPKINS, District Judge.

HOPKINS, District Judge. The bill [by John F. Curts and others] in this case charges that one Horatio Curts was in 1865 the owner of the land in controversy, being 320 acres of heavily timbered land in Clark county, in this state, and that he employed the defendant [Stephen] Cisna as his agent to pay the taxes thereon, as well as upon other lands owned by him in that vicinity, as he was a non-resident, and furnished him the funds necessary for that purpose; that the general taxes due in the winter of 1865, were paid by defendant for him, but a special war bounty tax was levied in February, 1865, of about $13, of which he had no notice, and for which the land was sold in May, 1865, without his knowledge; that the defendant Cisna continued to pay his taxes up to the time of his death in 1868; that on his death his property descended to John Curts, his father, who thereafter continued to employ Cisna to pay the taxes for him, as he had before done for Horatio, his son, and that he furnished the necessary funds to pay all taxes, and to redeem from tax sales as might be necessary, up to the time of his death in March, 1874; that the defendant Cisna paid the taxes up to the time of his death, either directly or by redemption, and never notified him of the tax deed mentioned in the complaint, or of the existence of the tax for which it was given; that in 1869 Cisna, discovering that the land had been sold for the special tax in 1865, and that the certificates

were outstanding, purchased them, and on the 15th of June, 1869, took a deed thereon to himself, which he immediately had recorded; that after the deed to him he paid the taxes thereon with Mr. Curts' money the same as before, and sent receipts to him; that on the death of John Curts the claimants in this case succeeded to his interest and title, as his heirs-at-law; that the defendant Cisna, on May 29, 1874, contracted to sell the lands for $1,500 to the defendant Gage, through the agency of one B. F. French, an attorney residing in Clark county, who acted as Gage's agent. The bill then charges that the land was worth $8,000, and that Mr. Gage or Mr. French, his attorney, had notice of the facts and circumstances under which defendant Cisna obtained the tax deed, and that only a part of the consideration agreed upon had been paid, and no deed had been executed or delivered by Cisna to Gage of the premises. The bill prayed that the defendants might be required to release all claim under the tax deed and that it might be decreed void against them.

The defendants file a joint and several answer, in which they admit the land to be worth $8,000, as charged in the bill, and that Cisna's title was a tax title, as stated in the bill. They deny that he was the agent of either Horatio or John Curts to pay their taxes on the land as alleged, and they allege that John Curts had notice of the tax deed, and deny that either Gage or French, his agent, in making the purchase had any knowledge or notice of Cisna's relations with the Curtses, or that he was their agent or owed them any duty whatever. It does not state when they or either of them first had notice of the plaintiff's claim, nor whether it was before or after the second payment of $500 in 1875, nor does it claim that a deed has been executed to Gage, or that he has any other right than is derived under the contract set out in the bill.

Upon these issues testimony has been taken, from which it appears most conclusively that Cisna was the agent of both Horatio and John Curts for the payment of their taxes on this land as charged in the bill. The defendant's letters to them, and the tax receipts sent them by him, place that question beyond all doubt, and convict him of a most deliberate and outrageous fraud in the transaction of obtaining the deed, and also of falsehood in his testimony in denying the agency. It is seldom that parties are enabled to establish the rascality of an adversary so incontrovertibly as the plaintiffs in this case have that of the defendant Cisna.

It appears that on the day he took this deed, he paid all the general taxes due or unpaid on the land, out of Mr. Curts' money, and sent to him the receipts and his account, including a charge of $5 for his services, and also $5 paid B. F. French for services, and wrote him as follows: "I went to Clark county and paid the taxes; your land is all clear now, except some that lies back from the river, there is a tax deed on, which was given in 1864," and again on the 16th of June, 1869, the day after he had taken and recorded this deed, he wrote him again about paying the taxes in Clark county, in which he said "the land is all clear now" with the exception of the old tax deed of 1864, and that he would see if that could not be released for the costs.

In view of these letters and receipts it seems preposterous that he should claim the land under that deed, or attempt to deny his agency. It must have required some courage coupled with a great degree of moral depravity on his part to deliberately write a falsehood of that character to his employer, who had trusted his interests in his hands. It looks like a carefully contrived scheme to defraud his employer of this valuable property. He paid the general taxes and sent receipts therefor, and took the deed for the special tax, which was unknown to his principal, and therefore would not likely be discovered, as there would be no occasion for examination in regard to such a tax. He doubtless thought if he could conceal the existence and record of the deed for three years, the principal's right to impeach it would be barred, as the statute of this state limits the right of an original owner to three years to bring an action to defend or set aside a recorded tax deed.

But this is not all of his fraudulent conduct. He continued to pay the subsequent taxes out of Mr. Curts' funds, and to send him the receipts. This became a necessity to avoid inquiry on the part of Mr. Curts, and the consequent investigation, which would necessarily expose him before his scheme had existed three years. It is true, he swears that he told Mr. Curts of the existence of this deed in 1870, but his testimony on that point, Mr. Curts being dead, was incompetent. But if not incompetent, it is incredible. A careful examination of the letters written by him to Mr. Curts after that time (and they are numerous) shows that no mention was made of any such deed, although reference is made to tax deeds on other portions of his land. From this silence we are constrained to discredit his testimony upon that point, as well as upon the question of his agency. It is also true that a Mr. Bowman swears that he told Mr. Curts of this deed in 1870, and so does Mr. B. F. French testify that he spoke to him about it once. But from the whole evidence and conduct, the transactions of the parties, Curts and Cisna, subsequent to that time, we think these witnesses must be mistaken; that their conversation must have related to some other tax deed, or have been understood by Mr. Curts as relating to some other tax deed.

The position occupied by Mr. French in reference to this matter is not wholly free from suspicion. The evidence may not be sufficient to charge him as a confederate of

Cisna, but there are circumstances that require close scrutiny into his conduct, motives and testimony. He swears he had the tax certificates and sold them to Cisna, knowing they were on Curts' land, on condition that Cisna should take a deed and not let Curts have them, and yet charges $5 for services rendered to Mr. Curts on the day of the deed, that Cisna paid, and neither he nor Cisna is able to state what those services were, and very soon after Mr. Curts' death, we find him negotiating for this title with Cisna, and all in the name of Mr. Gage, the other defendant. It is also shown that Cisna paid him $50 out of the first payment for his services in buying the land from him, which, in short, was paying him for buying this land of him for a client of his—a transaction almost as questionable as that of Cisna in taking the tax deed. He probably knew all about it, but as there is no proof that he acquired such knowledge during the time he was acting as agent for Gage, Mr. Gage's rights would not be affected by his former knowledge, unless we presumed that he had the facts of the case in his mind at the time, which his evidence negatives. But it is not necessary to pursue the examination of Cisna's rights any further. He did not acquire any rights under the deed, and is not entitled to any benefit or advantage therefrom, and whatever he has received he should pay back, either to his co-defendant, from whom he received it, or to the complainants, the victims of his contemptible fraud.

This brings us to the consideration of the rights of the defendant Gage. In the answer, the rights of a bona fide purchaser are claimed for him. The facts to constitute him such are imperfectly stated in the answer, but as the parties have gone to a hearing, we will examine the question upon its merits, not regarding any technical imperfections in the pleadings. The defendant Gage is not within the authorities a bona fide purchaser, for to constitute such the purchase must be completed by a deed, and the consideration be fully paid, before notice of complainant's rights. Hill, Trustees. marg. p. 514 et seq.; Boone v. Chiles, 10 Pet. [35 U. S.] 177, 242. See Lead. Cas. Eq. p. 93 et seq. See, also, Hunter v. Simrall, 5 Litt. [Ky.] 62; Blight's Heirs v. Banks, 6 T. B. Mon. 192; Halstead v. Bank of Kentucky, 4 J. J. Marsh. 555; Moore v. Clay, 7 Ala. 742.

In this case the consideration was not fully paid, nor was there a deed to Mr. Gage. The title, while in the vendor, Cisna, is considered as held for the benefit of the prior equity in preference to those of later origin, so that the defendant Gage is not entitled to the land. The only question remaining is whether he is entitled to have the amount he had paid toward the purchase, to wit, the $1,000, refunded before the surrender of his claim. This involves the consideration of a good many questions, and first, not being a bona fide purchaser, not having the legal title, can his interest be considered as other than an equitable right, and if so, does he not fall within the rule that when both parties' rights are equitable, the older prevails? The equitable right of these complainants to this land as against the defendant Cisna, under whom the defendant Gage claims, is clear and unquestionable. His title, the tax title was obtained without any act or deed on their part, and was obtained by fraud and without consideration to them, so their equity is perfect and the older.

The defendant Gage has a contract for the land upon which he has paid $1,000, before the commencement of this suit. Now, is his interest anything but an equitable one? If not, it must yield to the complainant's. In Peabody v. Fenton, 3 Barb. Ch. 451, 465, it is held that if a bona fide purchaser has not obtained the legal title by a valid conveyance, he cannot protect himself against the prior equity of the original owner, although he has a contract for the purchase and has actually paid for the land; and cites, in support of that doctrine, Wigg v. Wigg, 1 Atk. 384; Tourville v. Naish, 3 P. Wms. 307; 2 Sugd. Vend. (9th Ed.) 274. In Boone v. Chiles, supra, the court examine the subject to ascertain who are entitled to the rights of a bona fide purchaser, and arrive at the conclusion that such rights exist only "when a prior equity can be barred or avoided only by the union of the legal title with an equity arising from the payment of the purchase price without notice and a clear conscience."

If this is a correct statement of the rule, the rights of a bona fide purchaser do not attach upon paying the purchase price and taking a contract for a deed, but only on a union of a legal title with the payment, and that until such union the right of the purchaser is equitable, and a prior equity must prevail. This view is supported by the weight of American and English authorities, and is fatal to defendant's claim of protection as to the $1,000 paid before surrendering his rights under his contract. He must look to his contract and seek redress of the party with whom he contracted.

But there are some other questions presented in this case that deserve some notice from their importance. The fact is admitted by the pleadings that the defendants contracted to buy this property for less than one-fifth of its real value. Is he entitled, in view of that fact, to be treated as a bona fide purchaser without notice? Under such circumstances, should not a court presume that he had notice of the defective and imperfect character of the plaintiff's title, particularly in the absence of any explanation on the subject? The purchaser of a promissory note at such a discount, would not, by the law merchant, be regarded as a bona fide holder for value to cut off the equities of the maker, and should a court of equity look with more favor upon a transaction apparently so unjust and unconscionable? It would seem to

be not consistent with the quality of equity to do so without some satisfactory explanation of such gross inadequacy, especially where the party claiming under such contract is seeking to defeat a prior equity of unquestionable character, as that of the plaintiff's in this case is.

This case differs in another important respect from the reported cases when the rights of the bona fide purchasers are discussed. In the most of them the plaintiff had voluntarily parted with the title, had made a sale and delivered a deed and was seeking to avoid it on the ground of fraud on the part of his grantee in obtaining it. In that class of cases courts of equity very properly lean toward the protection of a party who had bought, relying on the record and apparent title. But in this case, the plaintiffs and intestate have not conveyed; they had not clothed Cisna with any apparent title. The record shows them to be the original owners, and that Cisna's claim was adverse—only a tax title, which probably accounts for the inadequate price paid. The record disclosed also that Cisna had obtained this property, worth $8,000, for about $13.

This places the parties in a different attitude before the court. It is the case of the purchaser of an adverse title seeking the protection of a bona fide purchaser as against the real owners and claimants. No case has been found where the purchaser of an adverse title has been allowed to demand of the real owner what he may have paid for the adverse title as a condition of surrendering his worthless claim. In Moore v. Dodd, 1 A. K. Marsh. 103, it is held that a purchaser without notice will not be protected against a superior equity, deduced under an adverse claim. Mr. Gage knew his vendor's title was a tax title only, and should be held as having assumed the burden of maintaining that it had extinguished the title of the plaintiff, which was the record title, and adverse as to him.

Courts of equity should pause before going to this extent. A party who obtains "acres for cents," as tax title owners are charged with doing, hardly occupies a position which authorizes him to introduce to courts of equity, parties claiming under him as innocent purchasers as against the parties owning the original title. Grantees cannot be transformed so readily into subjects of favor in those courts. The taint of the original transaction will adhere to them until they show, at least, that they had paid full value, which might warrant a court in presuming that they had purchased in the belief that they were getting a good and perfect title. But when, as in this case, the purchaser pays only one-fifth of the real value, he cannot be entitled to claim the protection, or the favorable consideration due to a bona fide purchaser, but should rather be looked upon as a speculator in questionable titles.

In view of all the testimony in this case,

we have come to the conclusion that the defendant Gage must be considered as not occupying the position of a bona fide purchaser, and therefore his claim is no better than that of Cisna, and that he, as well as Cisna, must surrender and release all claim or title to the land in controversy, and pay the costs of this case to be taxed. The complainants, upon paying into court the amount paid by Cisna for special tax certificates and interest thereon, will be entitled to a decree requiring the defendants to release and relinquish all right and title to said land, and perpetual'y enjoining them from setting up or claiming any right derived under or through the tax deed mentioned in the bill of complaint.