First National Bank of Stevens Point vs. Chafee.

First National Bank of Stevens Point, Respondent, vs. Chafee, imp., Appellant.

*November 19 — December 10, 1897.*

*Conveyances: Mortgages: Priority: Notice.*

1. The actual and open possession of land by the vendee, under an unrecorded contract for its purchase, is constructive notice of his rights to one who, while he is so in possession, takes a mortgage of the land from the vendor, but it is not notice of the rights of one to whom the vendor has secretly assigned the contract.

2. A mere executory contract for the sale of land is not a "conveyance," within the meaning of secs. 2241, 2242, R. S., nor is the vendee a "purchaser" within the meaning of those sections, which make an unrecorded conveyance void as against a subsequent purchaser in good faith whose conveyance shall first be recorded.

3. In the absence of actual notice, or knowledge of facts sufficient to put him upon inquiry leading thereto, that the vendor in a contract for the sale of land has assigned such contract by a secret parol assignment, one who takes from the vendor a mortgage of the land will be protected against the assignee of the contract, and the claims of the latter will be held subject and subordinate to such mortgage.

APPEAL from a judgment of the circuit court for Waushara county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

This action was commenced March 30, 1896, by the assignee of a land contract against the vendee in possession, and also against the vendor and a subsequent mortgagee of the vendor, to foreclose the contract, and have the mortgage adjudged subject and subordinate to the plaintiff's claim. Issue being joined and trial had, the court found, as matters of fact, in effect, as follows: September 3, 1892, the defendant James F. Wiley, was the owner in fee of the 240 acres of land described. On that day Wiley and wife made and entered into a land contract for a deed with the defendant A. B. Mathews, by the terms of which Mathews agreed to pay, as the purchase price therefor, $4,000, according to the terms of ten promissory notes, of $400 each, dated on that day, and executed by A. B. Mathews, and payable to the order of James F. Wiley, with interest at six per cent. per annum, to become due, respectively, in one, two, three, four, five, six, seven, eight, nine, and ten years from that date. At the same time and as a part of the same agreement, another and further instrument was made, executed, and delivered by J. F. Wiley and A. B. Mathews, whereby Mathews was to put in twenty acres of potatoes each year (at least), and more if he wished, on his best land, of the best varieties, and to deliver all the good merchantable potatoes grown each year thereon to J. F. Wiley & Son's potato storehouse, in the fall of each year, at thirty cents per bushel, until enough should be delivered to pay $4,000 and interest, as per the ten notes mentioned, the first twenty acres to be planted in the spring of 1893. Immediately after the execution of the two land contracts mentioned, and the ten notes therein mentioned, A. B. Mathews and his wife, the defendant Julia Mathews, entered into the open and notorious possession of the real estate under his land contracts, and continued to occupy the

same and remain in such possession until the trial of this action, claiming his interest in the real estate by virtue of the land contracts.

On September 30, 1892, J. F. Wiley & Son and J. F. Wiley were, and had been for six months, indebted to the plaintiff in the sum of $5,000. Such indebtedness was renewed on that day by two notes executed by J. F. Wiley & Son, and delivered to the plaintiff, and as collateral security for the payment of the two last-mentioned notes the said J. F. Wiley did, on September 30, 1892, as such owner and holder of the land contract and the ten notes mentioned therein, deliver to the plaintiff the ten promissory notes so signed by A. B. Mathews, as collateral security for the $5,000 represented by the two renewal notes so given on that day. At the time of such delivery, J. F. Wiley represented and stated to the plaintiff that the ten notes were secured by a mortgage of real estate or by a land contract. It was then and there agreed by and between the plaintiff and J. F. Wiley that the plaintiff would receive and hold the ten notes as such security, and the plaintiff had ever since held and still continued to hold the ten notes as such security, with the consent and approval of J. F. Wiley & Son and J. F. Wiley.

On July 16, 1894, the notes so executed September 30, 1892, were consolidated into one note of $5,000, with interest at eight per cent. per annum, signed by J. F. Wiley & Son, and was due in ninety days thereafter. The $5,000 note was renewed from time to time until October 3, 1895, on which date it was renewed for the last time, and the same was made payable ninety days from that date, with interest at eight per cent. per annum. No payment had ever been made on that note, except $100, paid January 13, 1896. Neither the land contract nor any assignment thereof was ever recorded in the register's office; and the plaintiff did not, at any time, inform Mathews that his notes were held by it, until March, 1896, and Mathews did not know until that date that

the plaintiff held the notes, and he made payments thereon to J. F. Wiley in 1893, $474.45, and in 1894, $281.15, which moneys were retained by Wiley, with consent of the plaintiff, and the amount thereof was indorsed on said notes. There was due and to become due upon the ten notes and land contract $4,211.72 for principal and interest to December 28, 1896, of which sum there was then due for principal and interest $1,477.72.

On October 15, 1895, the defendant *Charles Chafee* loaned to J. F. Wiley $8,000, evidenced by four promissory notes, of $2,000 each, due in six, twelve, eighteen, and twenty-four months respectively; and as collateral security for the payment of said notes, J. F. Wiley and wife did, on the same day, duly make, execute, and acknowledge to *Charles Chafee* a real-estate mortgage upon the lands described, and other lands, which mortgage was duly recorded in the register's office, October 17, 1895.

On October 17, 1895, J. F. Wiley and wife executed, acknowledged, and delivered to *Charles Chafee* a second mortgage upon the lands in question, and other lands, to correct an error in the description of the first mortgage, and the same was recorded in said register's office, October 29, 1895. Both of said mortgages were executed without the knowledge or consent of A. B. Mathews and wife, or the consent of the plaintiff. At the time of giving such mortgage *Charles Chafee* had notice that A. B. Mathews was in the actual possession of the lands under said land contract, claiming an interest therein by virtue thereof. When Wiley was negotiating said loan of $8,000 from *Chafee*, the latter inquired of him whether or not there was any lien or incumbrance against the lands described, and he was informed by said Wiley that there was not, except that he had made a contract of sale with Mathews to be paid in potatoes, but that there had been practically nothing paid on the principal, and that Mathews wished to be relieved of the contract, so that

it was practically unincumbered. *Chafee* had no actual knowledge or actual notice that the notes accompanying the land contract had ever been assigned to the plaintiff or any one else. Notice of the pendency of this action was duly filed in the register's office, April 23, 1896.

As conclusions of law, the court found, in effect, that the transfer of the ten notes to the plaintiff operated as an assignment of the land contract to the plaintiff, and that the plaintiff, by virtue thereof, could maintain this action to foreclose the same; that the plaintiff was a *bona fide* holder of the notes described in the land contract; that the mortgaged premises be sold in one body, and that it was for the interest of all the parties that the same should be so sold; that the defendant *Chafee* was chargeable with notice of the land contract and the contents thereof, and of the existence of the ten promissory notes therein described, and with notice that the plaintiff was in possession of said ten notes, and all of the rights of the plaintiff in the premises, under the facts as therein found to be true; that *Charles Chafee* was not an innocent mortgagee of the premises hereinbefore described; that his mortgages, and each of them, were subject and subordinate to the rights of the plaintiff in the premises, by virtue of the facts so found; that the defendants A. B. Mathews and wife were wholly in default; that the plaintiff was entitled to a judgment of strict foreclosure of the land contract, in accordance with such findings.

From the judgment entered thereon according to such findings, the defendant *Chafee* brings this appeal.

*John Barnes*, for the appellant.

For the respondent there was a brief by *Cate, Sanborn, Lamoreux & Park*, and oral argument by *B. B. Park*. They argued, *inter alia*, that the transfer of the vendee's notes to the plaintiff was a transfer of the contract by which they were secured. *Church v. Smith*, 39 Wis. 492. The mortgagee was chargeable with notice of all the facts about the

contract which he might have learned from the vendee. *Mateskey v. Feldman,* 75 Wis. 103; *Williamson v. Brown,* 15 N. Y. 354, 362; *Brinkman v. Jones,* 44 Wis. 519; *Ely v. Wilcox,* 20 id. 524; *Wickes v. Lake,* 25 id. 71; *Denton v. White,* 26 id. 679; *Le Neve v. Le Neve,* 2 White & T. Lead. Cas. Eq. 109; note on 159, 180, 187; 1 Story, Eq. Jur. § 410*a;* 2 Sugden, Vendors (8th Am. ed.), ch. 24, sec. 1, p. 513, and note (*a*); *Losey v. Simpson,* 11 N. J. Eq. 246.   The vendee's possession was notice, not only of his rights, but of the rights of persons claiming under the vendor.   *Coe v. Manseau,* 62 Wis. 81–87, 88;  Wade, Notice, secs. 30, 65, 65*a.*

CASSODAY, C. J.   Of course, the actual and open possession of the land by Mathews, as vendee under the unrecorded contract for the purchase of the same, as found by the court, was constructive notice to *Chafee* and the world as to what his rights and interest in the land were.   *Meade v. Gilfoyle,* 64 Wis. 25; *Coe v. Manseau,* 62 Wis. 82; *Wickes v. Lake,* 25 Wis. 71; *Ely v. Wilcox,* 20 Wis. 523.   But such constructive notice related primarily to the rights and interest of Mathews.   Thus, it has been held that where the vendee, in such actual possession, has paid to the vendor the full amount of the purchase price for the land, then such vendee by such payment becomes the absolute equitable owner.   *Honzik v. Delaglise,* 65 Wis. 499.   In the case at bar the vendee had failed to keep up the interest, much less to reduce the principal.   As Wiley informed *Chafee,* Mathews' interest was practically nothing.   All of Mathews' payments had been made to Wiley personally, and Mathews did not know that Wiley had transferred his notes or the contract to the plaintiff until this action was commenced. There is no pretense that *Chafee* had any knowledge or reason for believing that such transfer had been made until long after he had loaned his money to Wiley and taken and recorded his mortgage.   So far as *Chafee* was concerned,

and so far as Mathews was concerned, such transfer from Wiley to the plaintiff was a secret. To hold that such possession of Mathews was a constructive notice to *Chafee* of the secret arrangement between Wiley and the plaintiff — unknown to both Mathews and *Chafee* — would be to defeat the very object of the registry statutes. It does not appear that the plaintiff held any formal assignment of the land contract from Wiley, much less that any such assignment was recorded.

The statute declares that " every *conveyance* of real estate within this state . . . which shall not be recorded as provided by law, shall be void as against any subsequent *purchaser* in good faith, and for a valuable consideration, of the same real estate, or any portion thereof, whose conveyance shall first be recorded." R. S. sec. 2241. The statute also declares that " the term ' conveyance,' as so used, shall be construed to embrace every instrument in writing, by which any estate or interest in real estate is created, aliened, *mortgaged*, or assigned, or by which the title to any real estate may be affected in law *or equity*, except wills, leases for a term not exceeding three years, *and executory contracts for the sale or purchase of land;* and the term ' purchaser,' as so used, shall be construed to embrace every person to whom any estate or interest in real estate shall be conveyed for a valuable consideration, and also every assignee of a mortgage or lease, or other conditional estate." R. S. sec. 2242. From this last section it is apparent that a mere " executory contract for the sale or purchase of land " is not a " conveyance," within the meaning of sec. 2241, R. S., and that the vendee in such contract is not a " purchaser " within the meaning of that section. This was held by Judges Davis and Hopkins in *Curts v. Cisna,* 7 Biss. 260. The ground of such decision is that such vendee must rely on the responsibility of his vendor. *Id.* But, as indicated, if the contract is so far executed that the vendee has entered into the open

and notorious possession of the land contracted for, then he is protected by virtue of such possession. But the statute also provides that "every bond *or contract* for the sale or purchase of lands, or concerning any interest in lands, made in writing, under seal, attested by two witnesses, and acknowledged, may be recorded in the office of the register of deeds of the county where the lands lie." R. S. sec. 2238. The statute further provides that "every bond *or contract* mentioned in section 2238, when executed, acknowledged and recorded, as provided in said section, shall be notice to and take precedence of any subsequent purchaser, and shall operate as a lien upon the lands therein described, according to its import and meaning." R. S. sec. 2245. But the land contract was not recorded, and it does not appear that it was so executed as to be recordable. The term "conveyance," as used in sec. 2241, is construed by sec. 2242 to include a mortgage, and the word "purchaser," as therein used, is construed to include a mortgagee. Id.

In the absence of actual notice or knowledge of such facts as would put a prudent man upon inquiry which would lead to actual notice, *Chafee*, as such mortgagee, had the right to rely on Wiley's apparent record title in fee, subject, of course, to the rights and interest of Mathews in possession. *Chafee* was a *bona fide* purchaser as against the plaintiff. Had Wiley, at the time of transferring the ten notes made by Mathews to the plaintiff, also executed and delivered to the plaintiff a warranty deed of the premises and then failed to record the same, such deed would, under the statutes cited, have been void as against the mortgage from Wiley to *Chafee* so recorded in October, 1895. Since that would be so in respect to such warranty deed, it must, for a much stronger reason, be so with respect to the secret transfer from Wiley to the plaintiff, which did not rise to the dignity of a conveyance, and was not recorded nor recordable. It would be preposterous to hold that such secret parol transfer of the

notes and land contract to the plaintiff was more potential than such unrecorded warranty deed would have been. We must hold that the plaintiff's claim upon, and interest in, the premises in question are subject and subordinate to *Chafee's* mortgage. *Lamont v. Stimson,* 5 Wis. 443; *Hoyt v. Jones,* 31 Wis. 389; *Mason v. Beach,* 55 Wis. 607.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to enter judgment in accordance with this opinion.