**In re Donald R. HOEPPNER, Penny A. Hoeppner, Debtors.**

**Paul G. SWANSON, Trustee, Plaintiff,**

**v.**

**UNION STATE BANK, Defendant.**

Bankruptcy No. 83–02625.
Adv. No. 84–0025.

United States Bankruptcy Court, E.D. Wisconsin.

April 3, 1985.

Paul G. Swanson, Oshkosh, Wis., for plaintiff.

Richard J. Dufour, Wautoma, Wis., for defendant.

### DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

The two part question before this Court is:

1.  Does Chapter 409 of the Wisconsin Statutes (which is the counterpart of Article 9 of the Uniform Commercial Code) [1] apply to an assignment of a land contract vendor's interest?

---

1. Because Wisconsin has adopted the Uniform Commercial Code, throughout this decision wherever Article 9 of the Uniform Commercial Code and Chapter 409 of the Wisconsin Statutes are each referred to, they shall also apply to each other.

2. If so, does the failure to file a financing statement covering this assignment with the Secretary of the State of Wisconsin render it void as against the trustee in bankruptcy for the debtor land contract vendor in a subsequent bankruptcy?

This issue has been presented upon stipulated facts and well prepared briefs. It raises a matter of first impression, not only in Wisconsin but also in the Seventh Circuit.

## FACTS

In 1980 and 1981, Donald R. Hoeppner ("debtor") conveyed five parcels of real estate to five different purchasers by means of land contracts. Thereafter, on October 29, 1982, all of the debtor's interest as vendor of these land contracts was assigned to Union State Bank ("Bank") as collateral for a loan in the sum of $38,-500.00. There were five separate assignments. All of the land contracts and assignments of the land contract vendor's interest were recorded with the Register of Deeds for Waushara County, Wisconsin, where all of these parcels of real estate are located. However, there were no financing statements filed with the Secretary of the State of Wisconsin covering the land contracts or assignments of the land contracts.

On July 14, 1983, the debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code.

## LAW

■ A resolution of this dispute is dependent upon substantive state law—in this case, the law of Wisconsin. In *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), Justice Stevens, in a unanimous decision, declared that in those areas where Congress chose not to define property rights of the parties to a bankruptcy proceeding by statute, state law is determinative. Both parties agree that under Wisconsin law, a land contract vendor holds a personal property interest in the land by virtue of the doctrine of equitable conversion. *Mueller v. Novelty Dye Works,* 273 Wis. 501, 78 N.W.2d 881 (1956); *Estate of Fischer,* 22 Wis.2d 637, 126 N.W.2d 596 (1964).

The trustee contends that the land contract vendor's interest, being personal property, is subject to Chapter 409 of the Wisconsin Statutes. It therefore follows, according to the trustee, that the failure by the Bank to comply with the perfection requirements of Wis.Stats. 409.401(1)(c) (which require that a financing statement be recorded in the Office of the Secretary of State) renders its interest in the assignments subordinate to his interest under U.S.C. § 544(a) of the Bankruptcy Code. Section 544(a) is the strong-arm provision which gives to the trustee the rights of a hypothetical judicial lien creditor which are superior to the rights of an unperfected security interest holder. The trustee cites *In re Equitable Development Corp.,* 617 F.2d 1152 (5th Cir., 1980) and *In re Freeborn,* 94 Wash.2d 336, 617 P.2d 424 (1980). Both of these decisions emphasize § 9-102(3) of the Uniform Commercial Code, which corresponds to Wis.Stats. 409.102(3) and reads as follows:

> "The application of this chapter to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this chapter does not apply."

*Equitable Development Corp.* and *Freeborn* interpret this provision as meaning that, while a land contract itself is not subject to Article 9, the subsequent assignment of a land contract vendor's interest is so subject and must therefore comply with the filing requirements of Article 9.

The Bank, on the other hand, claims that not only a land contract, but also the assignment of a land contract vendor's interest is excluded from Chapter 409 because of Wis Stats. 409.104(10) which states:

> "§ 409.104—*Transactions excluded from Chapter*
> This chapter does not apply:
>
> \*    \*    \*    \*    \*    \*

(10) \* \* \* to the creation or transfer of an interest in or lien on real estate —".

It therefore follows, according to the Bank, that even though the land contract vendor's interest is itself personal property, it is still an "interest in or lien on real estate". Therefore, the assignment of a land contract vendor's interest, being a "transfer", falls outside of the scope of Chapter 409. As its authority, the Bank cites *In re Bristol Associates, Inc.*, 505 F.2d 1056 (3rd Cir.1974) and *Rucker v. State Exchange Bank*, 355 So.2d 171 (Fla.Dist.Ct.App.1978).

This, therefore, brings into sharp focus the inter-relationship and apparent conflict between Wis.Stats. 409.104(10) and Wis. Stats. 409.102(3) in the context of an assignment of a land contract vendor's interest. It also highlights an existing split of authority on this issue. In order to evaluate the relative merits of these opposing views, an analysis of the legislative intent and a consideration of the rules of statutory construction, is appropriate.

## LEGISLATIVE INTENT

"The recording statute is designed (1) to force the recording of all instruments so that the record will show a complete history of the title and (2) to protect the purchasers who rely on the record and purchase in good faith and for value over those who have not recorded their interest in the real estate thereby possibly misleading others. In other words, the purpose of the recording statute is to render record title authoritative to protect a purchaser who relies on the record and is a purchaser in good faith and for a valuable consideration."

*Kordecki v. Rizzo*, 106 Wis.2d 713, 718, 317 N.W.2d 479 (1982). The goal of the filing system is to make known to the public whatever outstanding security interests exist in the property of debtors. *In re Bristol Associates, Inc., supra*, 505 F.2d at 1063. It is not intended to create a windfall for a bankruptcy estate or a minefield for lenders who deal in good faith and in accordance with established commercial practices. The interest in providing adequate public notice must be balanced against the interest in promoting commercial law. *In re Bristol Associates, Inc.*, 505 F.2d at 1064.

Too much emphasis has been placed upon the fact that a land contract vendor's interest is personal property. This does not alter the fact that this interest is also "an interest in or lien on real estate" within the meaning of Wisconsin Stats. 409.104(10). *See, Burke v. Hoffman*, 28 N.J. 467, 147 A.2d 44, 49 (1958), which states:

"A mortgage debt, although a chose in action, is yet where the subject of the security is land, 'an interest in land', and priorities are governed by the rules applicable to interests in land, and not by the rules which govern interest in personalty."

Parties tracing the history of a title in land are not expected to examine records in the Office of the Secretary of State. The customary office for such examination is the Register of Deeds where real estate conveyances are routinely recorded. To require a lender to file a financing statement with the Secretary of State of Wisconsin when the assignment of a land contract vendor's interest is involved, absent explicit statutory language, would produce a harsh result never contemplated by legislators. It would involve additional expenses, result in delays in transfers and disrupt a free flow of funds. *In re Kennedy Mortgage Co.*, 17 B.R. 957 (Bankr.D.N.J.1982). Furthermore, it would create a chilling effect upon future loans by cautious lenders.

Chapter 706 of the Wis. Statutes deals with conveyances of real property and recording. Wis.Stats. 706.01(1) states:

"... this chapter shall govern every transaction by which any interest in land is created, aliened, mortgaged, *assigned* or may be otherwise affected in law or in equity." (emphasis added).

Because a land contract vendor's interest is both personalty and an interest in land, if such interest is to be recorded at all, Chap-

ter 706 (and more particularly Wis.Stats. 706.05, which states the place of recording is the Register of Deeds of the county in which the land is located), rather than Chapter 409, is the more appropriate chapter governing the method and place of recording.[2]

### IMPACT OF WIS.STATS. 409.102(3)

■ As previously noted, Wis.Stats. 409.-102(3) is interpreted by *Equitable Development Corp.* and *Freeborn* as meaning that a land contract vendor's interest, when assigned as collateral to a third party, is embodied within Article 9, even though the land contract itself is not. This Court rejects this view and holds that neither the land contract nor the assignment of the land contract vendor's interest is subject to Article 9. It therefore is allied with *Bristol Associates, supra,* where a detailed analysis of the official Comment 4 to § 9–102(3) of the Uniform Commercial Code is set forth.[3] A comparison of the current language of official Comment 4 with the prior language supports this conclusion.

■ Amended official Comment 4 now states that § 409.102(3) applies to a security interest in an "instrument". This replaces the previously used language of a security interest in a "note and mortgage".

The word "instrument" is defined, for purposes of Chapter 409, as a "negotiable instrument" and has no application to a land contract. The addition of the word "instrument" to and deletion of the word "mortgage" from the revised official Comment 4, suggests a conscious attempt to exclude mortgages and similar security interests (including land contracts) from Chapter 409. This conclusion was also recently adopted by *In re Maryville Savings and Loan Corp.,* 743 F.2d 413 (6th Cir.1984). In *Maryville Savings and Loan Corp., supra,* the court held that while a separate assignment of a promissory note for collateral purposes is within Article 9 (because it does not relate to real property) an assignment of a security interest in a deed of trust is not within Article 9 (because it is related to real property).

An assignment of a land contract vendor's interest is what is involved in this case at bar. A land contract is more in the nature of a mortgage or deed of trust than in the nature of a promissory note. While the legal rights and duties of a land contract and mortgage may differ, the economic essence of both is the same—a seller becomes a secured creditor for the unpaid installments and the land itself provides its security. *Wisconsin Real Estate Manual* (1980), § 8.05, *Mortgage and Land Con-*

---

**2.** Because the assignment of the land contract vendor's interest was in fact recorded with the Register of Deeds of Waushara County, this Court need not determine whether such an assignment of a land contract vendor's interest would have been valid as against the trustee in bankruptcy had it been neither recorded with the Register of Deeds of Waushara County nor filed with the Secretary of State of Wisconsin.

**3.** Official Comment No. 4, as amended, provides an illustration of the operation of UCC 9–102(3) and its counterpart, Wis.Stats. 409.102(3). It reads as follows:

"The owner of Blackacre borrows $10,000 from his neighbor, and secures his notes by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. [Nor is it applicable to a sale of the note by the mortgagee, even though the mortgage continues to secure the note.] However, when the mortgagee in turn pledges this [the] note and mortgage to secure his own obligation to X, this Article is applicable

to the security interest thus created in the note and the mortgage. [Applies to the security interest thus created, which is a security interest in an instrument even though the instrument is secured by a real estate mortgage.] Whether the transfer of the collateral for the note, i.e., the mortgagee's interest in Blackacre, requires further action (such as recording an assignment of the mortgagee's interest) is left to real estate law." [This article leaves to other law the question of the effect on rights under the mortgage of delivery or nondelivery of the mortgage or of recording or nonrecording of an assignment of the mortgagee's interest.] See Section 9–104(j). [But under Section 3–304(5) recording of the assignment does not of itself prevent X from holding the note in due course.]

Brackets indicate language additions to amended official Comment. Underlining indicates language which appeared in original official Comment but no longer appears in amended official Comment.

*tract Distinguished.* In tracing the change of wording in the official Comment 4, there is sound reason to conclude that § 409.102(3) was intended to mean that negotiable instruments (including mortgage notes) are subject to filing under Chapter 409, but mortgages and land contracts (including their assignments for collateral purposes), are not.

### STATUTORY CONSTRUCTION

■ This Court declines to place a restrictive construction upon § 409.104(10) which would exclude only the land contract, but not its subsequent assignment, from Chapter 409. There is nothing in Chapter 409 to suggest different treatment was intended to be afforded to each. In construing a statute, it is proper to assume the ordinary meaning of the statute intended by its drafters as accurately expressing the legislative purpose. *Mills Music, Inc. v. Snyder,* — U.S. —, 105 S.Ct. 638, 83 L.Ed.2d 556 (1985). Moreover, if the drafters intended to limit the application of Section 409.104(10) to the land contract only, they could have easily so stated. Legislators know how to limit a provision when they desire to do so. *Ohio v. Kovacs, d/b/a B & W Enterprises, et al.,* — U.S. —, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985), at p. 709.

■ This Court fully recognizes that it must not engage in judicial legislation. At the same time, an interpretation of statutes under the Uniform Commercial Code is to be considered in light of modern business practices. As stated in *Bristol Associates, supra,* at page 1062:

"Where language is susceptible of two reasonable meanings, a court, in the commercial field, should choose the interpretation which comports with current universal practices in the business world."

Excluding both the land contract and the assignment of the land contract vendor's interest from Chapter 409, comports with the rules of construction enunciated in the Uniform Commercial Code. Wis.Stats. 409.102 states:

"1. This Code shall be liberally construed and applied to promote its underlying purposes and policies.

2. The underlying purposes and policies of this Code are:

a. To simplify, clarify and modernize the law governing commercial transactions.

b. To permit the continued expansion of commercial practices through custom usage and agreement of the parties;"

*See also, In re Kennedy Mortgage Co., supra,* at page 962. In interpreting Sec. 409.104(10) in such a manner so as to exclude both the land contract and the assignment of the land contract vendor's interest from Chapter 409 and also interpreting Sec. 409.102(3) to limit it to negotiable instruments is in harmony with the declared philosophy and intent of the Code.

■ The assignment of the land contract vendor's interest to the Bank is therefore not subject to the provisions of Chapter 409 of Wisconsin Statutes and not void as against the trustee in bankruptcy.

This decision shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.