835 P.2d 811

In re Charles B. ANTHONY, also known as Chuck Anthony, and Annita Lynn Anthony Robbins, Debtors.

Walter L. REARDON, Jr., Trustee, Plaintiff–Appellee,

v.

James J. ALSUP, Linda W. Alsup, and Daniel A. Alsup, Defendants–Appellants.

No. 19543.

Supreme Court of New Mexico.

June 15, 1992.

James J. Alsup, Linda W. Alsup and Daniel A. Alsup, pro se.

Walter L. Reardon, Jr., Watrous & Reardon, Albuquerque, for plaintiff-appellee.

## OPINION

BACA, Justice.

This matter is before the court upon certification from the United States Court of Appeals for the Tenth Circuit pursuant to NMSA 1978, Section 34-2-8 (Repl.Pamp.1990), and SCRA 1986, 12-607. The primary question of New Mexico law is as follows:

> Does a security assignment of a real estate contract fall within the provisions of Article 9 of the New Mexico Uniform Commercial Code, NMSA 1978, Sections 55-9-101 to -507 (Repl.Pamp.1987 & Cum.Supp.1991), thereby requiring the filing of a financing statement in the Office of the Secretary of State in order to perfect the secured interest against the claims of third parties; or, if such a

security assignment falls within the Code, is it then excluded by Section 55–9–104(j) as a "transfer of an interest in or lien on real estate?"

## I. FACTS

The facts are not in dispute. On October 24, 1985, Charles Anthony and Annita Anthony–Robbins (Anthonys), the debtors, sold real property in Bernalillo County to Amelia and Jane Sanchez under the standard real estate contract, with legal title retained until full payment of the purchase price.

Thereafter, the Anthonys borrowed $10,300 from appellants, James and Linda Alsup. To secure the "Note," the Anthonys assigned their vendor's interest in the real estate contract to the Alsups in a document entitled "Collateral Assignment of Owner's Interest in Real Estate Contract," which assigned all "right, title, equity and interest" in the real estate contract, including the right to receive all monthly payments. The note, the assignment, and the cross deeds from and to the parties were placed in escrow. The Alsups recorded the Assignment in Bernalillo County in accordance with the real estate recording laws, but they did not file a financing statement under the provisions of Article 9 of the Uniform Commercial Code as adopted in New Mexico.

On January 26, 1989, the Anthonys filed for voluntary bankruptcy, and Walter Reardon, Jr. was appointed trustee. The trustee filed this action claiming priority over appellants as a hypothetical lien creditor under 11 U.S.C. §§ 542 and 547, to the assigned contract and the contract payments. The bankruptcy court voided the Alsups' interest in the collateral assignment, and the district court affirmed that judgment, holding that as a result of the Alsups' failure to perfect their security interest by filing a financing statement in accordance with the requirements of the Uniform Commercial Code, their interest was subordinate to the trustee's interest.

## II. ANALYSIS

The question before us is whether Article 9 of the Uniform Commercial Code (the "Code") applies to an assignment of the vendor's interest in a real estate contract, which was given as collateral for a separate transaction. An examination of the various jurisdictions that have spoken on this matter reveals that no clear consensus has been reached. See generally John F. Wagner, Jr., Annotation, Applicability of Article 9 of Uniform Commercial Code to Assignment of Rights Under Real–Estate Sales Contract, Lease Agreement, or Mortgage as Collateral for Separate Transaction, 76 A.L.R.4th 765 (1990). While some courts rely on the nature of the property—whether the property is characterized as realty or personalty, other courts have focused on the purpose of the law and the existing industry practice. Id.; see also David A. Redle, Article 9: Identifying Collateral as Real or Personal Property, 23 UCC L.J. 185 (1990) (providing a general discussion of the reasons offered in support of the various positions). We conclude that the security assignment of a real estate contract is not subject to the perfection requirements of Article 9.

Both parties agree that, under New Mexico law, a vendor's interest in a real estate contract is personalty, and not real property. Marks v. City of Tucumcari, 93 N.M. 4, 595 P.2d 1199 (1979) (holding that the city's judgment lien could not attach to vendor's legal title because the interest retained by a vendor under an executory contract of sale was personalty). Therefore, the issue is whether the assignment of the Anthony's interest in the subject real estate contract, which is deemed a personalty in New Mexico, is within the scope of Article 9 of the Code and thus subject to its perfection requirements.

While the Alsups do not dispute the characterization of their interest as personalty, they argue the transaction is nevertheless excluded from Article 9 under Section 55–9–104(j) which states:

**Transactions excluded from article.** This article does not apply * * * to the creation or transfer of an interest in or

lien on real estate, including a lease or rents thereunder.

Essentially, the Alsups maintain that while the interest is personalty, it also represents an interest in real estate and should be considered a "transfer" within the meaning of Section 55–9–104(j). According to the Alsups' argument, this Section should be interpreted broadly to exclude any transfer of an interest in realty, no matter what the purpose. Under this interpretation, it becomes irrelevant whether the land contract is characterized as personalty or realty for other purposes under state law. The Alsups submit a narrow interpretation of Section 55–9–104(j) excluding only transactions that Article 9 does not purport to cover under any circumstances (transfers not intended to create a security interest and real property transactions) would nullify the effect of Section 55–9–104(j). *See In re Bristol Assocs., Inc.*, 505 F.2d 1056, 1060 (3d Cir.1974); Robert H. Bowmar, *Real Estate Interests as Security Under the UCC.: The Scope of Article Nine*, 12 UCC L.J. 99, 107 (1979) (hereinafter *Bowmar*).

In support of their position, the Alsups also cite to cases from other jurisdictions that have concluded that transactions involving security interests in real estate contracts, deeds of trust, mortgages, and leases are not subject to Article 9. *See, e.g., Shuster v. Doane (In re Shuster)*, 784 F.2d 883 (8th Cir.1986) (applying Minnesota law held Article 9 did not apply to an assignment of a vendor's interest in the real estate contract); *First Nat'l Bank of Boston v. Larson (In re Kennedy Mortgage Co.)*, 17 B.R. 957 (Bankr.D.N.J.1982) (holding Article 9 inapplicable to an assignment of a mortgage on real estate); *In re Bristol*, 505 F.2d at 1061–62 (holding a real estate lease when used as collateral did not fall within the scope of Article 9); *Swanson v. Union State Bank (In re Hoeppner)*, 49 B.R. 124, 127–29 (Bankr. E.D.Wis.1985) (applying Wisconsin law, held assignment of vendor's interest in real estate contract was not subject to Article 9); *Rucker v. State Exch. Bank*, 355 So.2d 171 (Fla.Dist.Ct.App.1978) (holding assignment of a mortgage was not subject to Article 9). *But see, e.g., Frearson v. Win-*

*gold (In re Equitable Dev. Corp.)*, 617 F.2d 1152 (5th Cir.1980) (applying Florida law, held Article 9 applied to a security interest in contract rights and contract proceeds regardless of the fact that real property was also assigned); *Southwest Nat'l Bank v. Southworth (In re Southworth)*, 22 B.R. 376 (Bankr.D.Kan.1982) (holding vendor's right to receive payment under a land sale contract was personal property and a security interest representing that personal property right constituted realty paper and was subject to Article 9); *Erikson v. Seattle Trust & Sav. Bank (In re Freeborn)*, 94 Wash.2d 336, 617 P.2d 424 (1980) (En Banc) (holding when both real property and contract rights are assigned, assignee must both record under the real estate laws and file pursuant to Article 9).

The essence of the trustee's position is that Article 9 covers all transactions intended to create a security interest in personal property. Section 55–9–102(1) provides:

> Except as otherwise provided in Section 9–104 * * * on excluded transactions, this article applies:
>
> (a) to any transaction (regardless of its form) which is intended to create a security interest in personal property * * * *

Therefore, argues the trustee, the assignment of the vendor's interest, as personalty, is subject to the application of Article 9. Under the trustee's analysis, Section 55–9–104(j) would be construed narrowly, excluding only those transactions touching on the real estate itself, such as the creation of a mortgage or real estate contract, but not the subsequent uses of the mortgage or real estate contract.

■■■ Contrary to the trustee's contention, we do not find that the legal characterization of the interest as personalty is determinative of the applicability of Article 9 of the Code. Section 55–9–102(1) limits the scope of Article 9 wherein it expressly states: "[e]xcept as otherwise provided in Section 55–9–104 * * * on excluded transactions, this article applies to * * * * " In the case of *In re Hoeppner*, the court considered the same issue, and aptly noted: "Too much emphasis has been placed upon

the fact that a land contract vendor's interest is personal property. This does not alter the fact that this interest is also 'an interest in or lien on real estate' * * * *'' 49 B.R. at 127. Accordingly, that court held that the legislature intended both a land contract and the assignment thereof were similarly excluded by 55–9–104(j). *Id.* at 129; *In re Shuster,* 784 F.2d at 884. We agree.

A vendor under an executory contract for the sale of realty holds bare legal title to the real estate until full payment of the purchase price. *Marks,* 93 N.M. at 5, 595 P.2d at 1200. Thus, the Anthonys held legal title when they assigned all their interest in the real estate contract, and if the vendee fails to perform the contract obligations, that vendee's equitable interest is subject to divestment. *Id.* Accordingly, we hold that this transaction involved the "transfer of an interest in or lien on real estate" within the meaning of 55–9–104(j). *Accord In re Shuster,* 784 F.2d at 884; *In re Hoeppner,* 49 B.R. at 127; *In re Kennedy Mortgage Co.,* 17 B.R. at 964.

■ The trustee's argument also relies on Section 55–9–102(3) and Official Comment 4. Section 55–9–102(3) provides:

The application of this article to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this article does not apply.

The trustee argues that we should interpret this statutory provision to mean that while the real estate contract itself is not subject to Article 9 the subsequent assignment of the vendor's interest in the contract as security should fall within Section 55–9–102(3). By way of explanation, Official Comment 4 to Section 55–9–102(3) provides, in pertinent part:

An illustration of Subsection (3) is as follows:

The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This arti-cle is not applicable to the creation of the real estate mortgage. Nor is it applicable to a sale of the note by the mortgagee, even though the mortgage continues to secure the note. *However, when the mortgagee pledges the note to secure his own obligation to X, this article applies to the security interest thus created, which is a security interest in an instrument even though the instrument is secured by a real estate mortgage.*

(Emphasis added.) The trustee appears to be drawing an analogy between the "instrument" described in Comment 4 and the assigned real estate contract at issue. *See First State Bank v. Clark,* 91 N.M. 117, 119, 570 P.2d 1144, 1146 (1977) (holding official comments to the Code are persuasive, but not controlling, authority). We are not persuaded by this argument.

In the first instance, a comparison of the current version of Comment 4, as amended in 1966, and the version as originally adopted indicates that Article 9 was not intended to extend to mortgages, or similar real estate transactions (real estate contracts).[1] As originally adopted, the above emphasized portion of Comment 4 read:

However, when the mortgagee in turn pledges this note *and mortgage* to secure his own obligation to X, this Article is applicable to the security interest thus created in the *note and the mortgage.*

*Uniform Commercial Code,* American Law Institute § 9–102 (1958 Official Text) (emphasis added).

The amended version of Comment 4 deleted the words "and mortgage," and substituted the word "instrument" for the words "note and mortgage." The omission of the word "mortgage" suggests that while the security interest in the note is subject to the Code, the question of whether the security interest is perfected in mortgage and similar security interests (including real estate contracts) is left to local real estate law. Jan Z. Krasnowiecki et al.,

---

1. We recognize that the comments represent the opinions of the National Conference of Commissioners on Uniform Statute Laws and the American Law Institute. *Burchett v. Allied Concord Fin. Corp. (Del.),* 74 N.M. 575, 578, 396 P.2d 186, 188 (1964). The purpose of the comments is to explain the Code; thus promoting uniformity of interpretation. *Id.*

*The Kennedy Mortgage Co. Bankruptcy Case: New Light Shed on the Position of Mortgage Warehousing Banks,* 56 Am. Bankr.L.J. 325, 331–32 (1982) (hereinafter *Krasnowiecki*). This same argument has been advanced by a number of courts rejecting the application of the Article 9 to an assignment of a mortgage, *Rucker v. State Exch. Bank,* 355 So.2d at 174, the assignment of a lease, *In re Bristol,* 505 F.2d at 1061, and to the assignment of a real estate contract in *In re Hoeppner,* 49 B.R. at 128.

Secondly, we find no basis for the trustee's analogy in the case of a vendor's note secured by an assignment of the real estate contract. The situation described in Comment 4 is what scholars have referred to as a "second tier" transaction, unlike our case which is a "first tier" transaction. *See Bowmar,* 12 UCC L.J. 99, 100. According to *Bowmar,* a "first tier" transaction arises when the vendor under an executory contract for the sale of real estate assigns that contract to a lender as security for the payment of the vendor's note. *Id.* A "second tier" transaction involves the subsequent assignment by the lender of that same note and its contract assignment as a "security package" to secure its own note to a second lender. *Id.* Accordingly, as provided in Section 55–9–102(3), the second lender would have a security interest in a secured obligation—the vendor's note—that is "itself secured by a transaction or interest [the real estate contract assignment] to which this Article does not apply." *See id.* at 109 & n. 39.

■ Finally, our interpretation excluding this assignment from Article 9 is further supported by the language of Comment 4 that states in pertinent part: "This article leaves to *other law* the question of the effect on rights under the mortgage of delivery or nondelivery of the mortgage or of recording or nonrecording of an assignment of the mortgagee's interest. *See* Section 9–104(j)." (Emphasis added.) This language indicates a clear intent to give deference to the real estate law as to delivery and recording of assignments. *See* 1C Peter F. Coogan, et al., *Secured Transactions Under the Uniform Commercial*

*Code,* (MB) § 16C.05[3][c] (discussing Official Comment 4 to Section 9–102(3)); *Krasnowiecki,* 56 Am.Bankr.L.J. 325, 329–32. Real estate transactions were excluded from the Code because these transactions were already subject to a well-established body of law, which was not intended to be replaced by Article 9. *See, e.g.,* Peter F. Coogan & Albert L. Clovis, *The Uniform Commercial Code and Real Estate Law: Problems for Both the Real Estate Lawyer and the Chattel Security Lawyer,* 38 Ind.L.J. 535 (1963); *Krasnowiecki,* 56 Am. Bankr.L.J. 325, 329–32. Moreover, from a purely practical standpoint, parties tracing the history of a title to real property would customarily search the records in the office of the county recorder in the county where the land is located, and not the Office of the Secretary of State. *Accord In re Shuster,* 784 F.2d at 884–85; *In re Hoeppner,* 49 B.R. at 127.

■ Our analysis proceeds from the statute, and we give effect, insofar as possible, to the language and intent of the legislature, considering the language of the act as a whole. *State ex rel. Stratton v. Roswell Indep. Schools,* 111 N.M. 495, 500, 806 P.2d 1085, 1090 (Ct.App.1991). We agree with the Alsups' position, and, therefore, we decline to construe Section 55–9–104(j) so narrowly as to exclude only the land contract, but not its subsequent assignment. Nothing in Article 9 or the language of this exclusionary provision would indicate that the legislature intended to distinguish the two or accord each a different treatment. To require a lender to file a financing statement of an assignment involving a real estate contract in the Office of the Secretary of State without specific statutory language mandating the same would create harsh results never contemplated by the legislature. *Accord In re Hoeppner,* 49 B.R. at 127. In the absence of clear and express legislative intent to the contrary, the words used in the statute must be given their ordinary meaning, and the language of the statute is conclusive. *State ex rel. Reynolds v. Aamodt,* 111 N.M. 4, 5, 800 P.2d 1061, 1062 (1990). Moreover, excluding both the real estate contract and its assignment from the Code is not only com-

mercially reasonable, but also conforms with the purposes of the Code and its rules of construction. NMSA 1978, § 55–1–102 (Repl.Pamp.1987).

In accordance with the foregoing discussion, we hold that the security assignment of a real estate contract does not fall within the provisions of Article 9 of the New Mexico Uniform Commercial Code, NMSA 1978, Sections 55–9–101 to –507.

IT IS SO ORDERED.

FRANCHINI and FROST, JJ., concur.