In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1970

IN RE: TROY A. BLANCHARD & HEATHER J. BLANCHARD,

*Debtors.*

LARRY H. LIEBZEIT, Trustee in Bankruptcy,

*Plaintiff-Appellant,*

*v.*

INTERCITY STATE BANK, FSB, BENJAMIN R. HOFFMAN & DEBRA R. HOFFMAN,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 14-C-1527 — **Rudolph T. Randa**, *Judge.*

ARGUED OCTOBER 30, 2015 — DECIDED APRIL 14, 2016

Before POSNER, RIPPLE, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* The principal question in this appeal is whether a mortgage can properly attach a lien to a vendor's interest in a land contract under Wisconsin law. A secondary issue is whether the lender in this case perfected its

lien on the vendor's interest by recording its mortgage in county land records rather than with the Wisconsin Department of Financial Institutions under Article 9 of the Uniform Commercial Code, Wis. Stat. § 409.501(1)(b). Our answer to both questions is yes, so we affirm the judgments of the bankruptcy and district courts in favor of the lender.

I.    *Factual and Procedural Background*

In 2010, Troy and Heather Blanchard agreed to sell a residential property in Marathon County, Wisconsin, to Benjamin and Debra Hoffman. The Hoffmans paid the Blanchards $30,000 up front, and the Blanchards agreed to obtain a mortgage loan in their own name with the property as collateral. The rest of the purchase price for the land contract was to be due on September 1, 2015, but the Hoffmans had the option of completing the land contract sale early by paying off the balance of the Blanchards' mortgage. Under the land contract, then, the Blanchards received money immediately from the down-payment and the mortgage loan. Sooner or later, the Hoffmans would pay off the mortgage, probably by obtaining a loan in their own right. The Hoffmans also agreed to "rent" the property for $500 per month, and the parties signed a separate "rental agreement." No one recorded the land contract in the county land records.

As agreed, the Blanchards then obtained a mortgage on the property from Intercity State Bank. In exchange for a loan of a little more than $142,000, the Blanchards agreed to "mortgage, convey, assign, grant a security interest in and warrant" the property to the bank. This mortgage included a lien on "all privileges, hereditaments, easements and appurtenances, all rents, leases, issues and profits, all claims, awards and payments made as a result of the exercise of the right of eminent

domain, all existing and future improvements and all goods that are or are to become fixtures." The bank also obtained an Assignment of Leases and Rents as collateral for the mortgage loan but mistakenly neglected to obtain an Assignment of Land Contract. The bank recorded its mortgage and the Assignment of Leases and Rents in the county land records in 2011.

In 2014, the Blanchards filed for bankruptcy protection. The bankruptcy court appointed a trustee, plaintiff Liebzeit, who filed this adversary proceeding against Intercity State Bank. The trustee seeks to use his strong-arm powers under 11 U.S.C. § 544(a)(3), which grants him the position of a bona fide purchaser of property as of the date of the bankruptcy, to step in line ahead of the bank's mortgage so he can use the Blanchards' vendor's interest in the land contract for the benefit of unsecured creditors.

The trustee argues that a mortgage can attach a lien only to real property, that the Blanchards had sold their interest in the real property under the land contract, and that their interest as vendors in a land contract was personal property that was not subject to a mortgage or any other lien. The trustee concludes that the bank never attached a lien to that personal property, so the unencumbered interest should be available to unsecured creditors.

The bank and the trustee both moved for summary judgment. The bankruptcy court granted summary judgment for the bank. The court found first that the bank had notice of the land contract and that its interest was subordinate to that of the Hoffmans under the contract. That conclusion was clearly correct and is not challenged on appeal. As between the bank and the trustee, the court found that the Blanchards' rights as

vendors under the contract should be treated as an interest in real property that was properly subject to the bank's mortgage. The bankruptcy court also found that the mortgage was properly recorded and could not be avoided, and thus took priority over the trustee's effort to avoid the bank's lien.

On appeal by the trustee, the district court affirmed the bankruptcy court but based on different reasoning. The district court found that the Blanchards' interest as vendors under a land contract—the right to receive payments and bare legal title held as security in case of the vendees' default—was personal property rather than real property under Wisconsin law. The district court then found it was both necessary and appropriate to reform the mortgage to be secured by a personal-property interest in the land contract payments rather than a real-property interest in the land. The district court found that the bank had made a good faith mistake within the "reasonable standards of fair dealing in the residential loan industry" when it extended the mortgage loan to the Blanchards under the belief that the Hoffmans were tenants rather than land contract buyers. The court reformed the mortgage accordingly and on that basis affirmed summary judgment for the bank.

The trustee has appealed. The bankruptcy court's decision was a final judgment in the adversary action, so we have appellate jurisdiction. 28 U.S.C. § 158(d); *In re Katsman*, 771 F.3d 1048, 1049 (7th Cir. 2014); *In re Vitreous Steel Products Co.*, 911 F.2d 1223, 1230 n.3 (7th Cir. 1990). We review a grant of summary judgment *de novo*. *In re Duckworth*, 776 F.3d 453, 456 (7th Cir. 2014). We apply federal bankruptcy law to property rights governed by Wisconsin law.

II. *Analysis*

The trustee argues that the bank does not have a valid lien on the payments to the Blanchards under the land contract. From the premises that the mortgage could attach a lien only to real property and that the Blanchards' interest under the land contract is only personal property, he concludes that the mortgage as written attached a lien to nothing. He argues further that the district court acted contrary to our decision in *In re Duckworth*, 776 F.3d 453 (7th Cir. 2014), by reforming the mortgage to apply to personal property. The trustee also argues that the bank failed to record its mortgage properly so as to give the trustee constructive notice of its lien on the payments under the land contract. Under the trustee's argument, the payments to the Blanchards under the land contract should be available to pay their unsecured creditors rather than the bank.

We disagree with the trustee's premises and conclusion. We first determine that the Blanchards' interest as vendors under a land contract both could secure the bank's mortgage loan as a matter of law and did so as a matter of fact. Then we determine that the bank properly recorded its mortgage in the county land records. Because the mortgage was properly recorded, the bankruptcy trustee may not use his strong-arm powers to avoid the bank's mortgage lien on the Blanchards' interest as vendors under a land contract. Finally, because there was no need to reform the mortgage, our reasoning in *Duckworth* does not apply here.

A. *The Bank's Mortgage*

We hold first that the bank's mortgage validly attached a lien to the Blanchards' interest as vendors under a land contract. Wisconsin law has long recognized that it is possible to mortgage a vendor's interest under a land contract. See *First National Bank of Stevens Point v. Chafee*, 73 N.W. 318, 320 (Wis. 1897) (holding that a mortgagee of a land contract vendor had priority over an earlier unrecorded assignment of the land contract vendor's interest). The general consensus is in accord with that point of Wisconsin law. Grant S. Nelson et al., 1 Real Estate Finance Law § 3:37 (6th ed. 2014) ("The vendor's interest in an installment land contract is clearly mortgageable."); Baxter Dunaway, 2 Law of Distressed Real Estate § 14:35 (2015) ("The vendor's interest in an installment land contract is mortgageable and is subject to judgments by creditors of the vendor."); see also, e.g., Mich. Comp. Laws § 565.360(3) (spelling out land contract vendee's obligations if vendor mortgages vendor's interest). Because the vendor retains legal title to the land, "Traditionally, it has been a common practice for those who lend money on the security of a vendor's interest to treat the transaction as a simple mortgage on a fee interest in real estate." Nelson, *supra*, § 3:37. The mortgage is often accompanied by an assignment of the vendor's interest in the contract. *Id.*

That seems clear enough, but the wrinkle that gives the trustee an argument is that Wisconsin courts have also said in other statutory contexts that a vendor's interest in a land contract should be treated as personal property rather than real property. See *City of Milwaukee v. Greenberg*, 471 N.W.2d 33, 39 (Wis. 1991) (applying doctrine of equitable conversion, ven-

dor was not liable for cost of razing condemned building; vendor held not to be "owner" under applicable statute on liability for government's cost of razing); *Mueller v. Novelty Dye Works*, 78 N.W.2d 881, 884 (Wis. 1956) (creditor of vendor could not impose judgment lien on real property subject to land contract). If the vendor's interest is treated as personal property, it would be odd to attach a lien to it by a real estate mortgage.

Wisconsin courts have historically "found the question of whether a land contract vendor or vendee 'owns' property under a statute to be troublesome." *Greenberg*, 471 N.W.2d at 37–39 (surveying cases). Under Wisconsin's doctrine of equitable conversion, a land contract buyer obtains equitable title to the property, which includes "all the incidents of a real ownership." *Id.* at 36, quoting John Norton Pomeroy, A Treatise on Equity Jurisprudence, § 368, at 687 (4th ed. 1918). This leaves the vendor with "bare legal title" to the property as security for the unpaid portion of the purchase price. *Greenberg*, 471 N.W.2d at 36–37. The sometimes metaphysical difference between personal property and an interest in real property has fostered the controversy in this case.

Based on the 1897 decision in *First National Bank v. Chafee*, which was not overruled or modified by these later decisions dealing with different statutes and different purposes, and based on the general rule under the common law, we conclude that the Blanchards' interest as vendors under the land contract was a proper subject of a mortgage to secure the bank's loan to them.

Consistent with *First National Bank v. Chafee*, the language of the mortgage here is broad enough to encompass a land contract vendor's interest as collateral, even without a specific

mention of a land contract. The best reading of the mortgage is that it was secured by the Blanchards' interest as land contract vendors, the entire interest they possessed in the land when the mortgage was executed. The mortgage included "all privileges, hereditaments, easements and appurtenances, all rents, leases, issues and profits, all claims, awards and payments made as a result of the exercise of the right of eminent domain, all existing and future improvements and all goods that are or are to become fixtures." Black's Law Dictionary defines "rents, issues, and profits" as "The total income or profit arising from the ownership or possession of property." *Rents, Issues, and Profits*, Black's Law Dictionary (10th ed. 2014). This language was broad enough to grant the bank a lien on the land contract payments, which are included in the Blanchards' "total income" arising from their ownership of bare legal title in the land.

We thus agree with the bankruptcy court that the bank's mortgage "remains a valid lien on the [Blanchards'] interest in the property." The Blanchards validly mortgaged the (limited) "rights in the real property" that they retained as land contract vendors: "the rights to enforce the land contract, collect payments from the Hoffmans and foreclose if the Hoffmans default." As the bankruptcy court noted, giving the bank a lien on the land contract payments also "appears to coincide with the parties' intention: in the land contract, the [Blanchards] and the Hoffmans agreed that the [Blanchards] would obtain a mortgage at a favorable interest rate, and the Hoffmans would pay the balance due on the mortgage as the buyout price of the property."[1]

---

[1] Our holding is consistent with a non-precedential decision, *Community National Bank v. O'Neill*, 463 N.W.2d 880, 1990 WL 198035 (Wis. App. 1990)

B.  *Recording*

We also agree with the bankruptcy court that the bank perfected its lien by recording its mortgage in the county land records rather than by filing with the Department of Financial Institutions under Wisconsin's enactment of Article 9 of the Uniform Commercial Code, which governs secured transactions.

Wisconsin's land recording statute applies to "every transaction by which *any interest in land* is created, aliened, mortgaged, assigned or may be otherwise affected in law or in equity." Wis. Stat. § 706.001(1) (emphasis added); see also *id.* § 706.001(3) (requiring liberal construction "to effectuate the intentions of parties who have acted in good faith"). The scope of this statute is broad enough to include creation of a lien on a vendor's interest in a land contract, which includes legal title to land. The bank recorded its mortgage in the

---

(unpublished table opinion), which we mention because it was cited by the parties, the bankruptcy court, and the district court in discussing whether a land contract vendor's interest is mortgageable. In that case, a land contract buyer obtained a mortgage on the land from a bank, with the vendor co-signing. 1990 WL 198035, at *1. The issue was whether the bank could jump ahead of the land contract vendor in priority. The mortgage instrument unambiguously secured the buyer's debt, but it did not contain any reference to the land contract or any language indicating that it pledged the land contract vendor's interest as security for the debt. *Id.* The court held that the bank's mortgage lien was subordinate in priority to the land contract vendor's interest. *Id.* at *2. Most relevant here, the court then noted that one "clearly" can mortgage a land contract vendor's interest even though a land contract vendor's interest is in the nature of personal property rather than real property. *Id.*

county land records on April 21, 2011, long before the Blanchards filed for bankruptcy.

*In re Hoeppner*, 49 B.R. 124 (Bankr. E.D. Wis. 1985), provides persuasive guidance on this point of Wisconsin law. In *Hoeppner*, the court held that an assignment of a land contract vendor's interest was perfected when it was recorded in the county land records. *Id.* at 127–28. The court rejected the need to record an assignment of a land contract vendor's interest under Wisconsin Statutes Chapter 409, Wisconsin's enactment of Article 9 of the Uniform Commercial Code. Despite being deemed "personal property" for many purposes, a land contract vendor's interest is also "an interest in or a lien on real estate," the transfer of which was excluded from the scope of UCC Article 9 at the time. *Hoeppner*, 49 B.R. at 127 (internal quotation marks omitted). The court explained: "The goal of the filing system is to make known to the public whatever outstanding security interests exist in the property of debtors." *Id.* The court continued: "Parties tracing the history of a title in land are not expected to examine" the UCC records and should be able to rely on the county land records. *Id.* The court declined to interpret Chapter 409 as excluding the land contract itself from its scope but encompassing the land contract's assignment. *Id*. at 129; see also *In re Szatkowski*, 51 B.R. 104, 107 (Bankr. E.D. Wis. 1985) (following *Hoeppner*).[2]

---

[2] Different states follow different practices for recording the assignment of a land contract vendor's interest. In contrast to Wisconsin, some states require filing under the UCC to perfect the assignment of the contract interest and separate recording of the assignment of the vendor's legal title in the county land records. See, e.g., *In re Freeborn*, 617 P.2d 424, 428–29 (Wash. 1980) ("The UCC filing is necessary as to the right to receive contract payments. Recording is required because legal title is conveyed by

The trustee argues that *Hoeppner* is no longer a reliable guide to Wisconsin law on this point because Wisconsin adopted Revised UCC Article 9 in 2001. Scholars assert that Revised Article 9 includes within its scope transfers of a land contract vendor's interest. See Nelson, *supra*, § 3:37; Dale A. Whitman, *Transfers by Vendors of Interests in Installment Land Contracts: The Impact of Revised Article 9 of the Uniform Commercial Code*, 38 Real Property Probate & Trust Journal 421, 427 (2003). Under former Article 9, a land contract vendor's interest was deemed a "general intangible," and creation of a lien on it was to be perfected by UCC filing. Whitman, *supra*, at 429. Revised Article 9 transferred a mortgage on a land contract vendor's interest to the category of "accounts." Under Revised Article 9, an "account" includes "a right to payment of a monetary obligation … for property that has been or is to

---

the same instrument."). And in some cases involving transfers of a land contract vendor's interest, courts have held that only the contract interest has been transferred, so that UCC filing is the only applicable method of perfection. See, e.g., *In re Northern Acres, Inc.*, 52 B.R. 641, 646–47 (Bankr. E.D. Mich. 1985); *In re S.O.A.W. Enterprises, Inc.*, 32 B.R. 279, 283, 285 (Bankr. W.D. Tex. 1983); see generally Dale A. Whitman, *Transfers by Vendors of Interests in Installment Land Contracts: The Impact of Revised Article 9 of the Uniform Commercial Code*, 38 Real Property Probate & Trust Journal 421, 427 (2003) ("Some cases held that perfection as to both the debt obligation and the real estate security could be accomplished by recording in the real estate records; others held that perfection as to both rights could be accomplished by filing a UCC-1 financing statement; and still others held that the real estate rights and the debt obligation must be perfected separately by filing under Article 9 for the former and by recording in the real estate records for the latter."). Some scholars such as Whitman assert that Revised UCC Article 9 "clears up the controversy" and that UCC filing is now all that is required.

be sold … ." Wis. Stat. § 409.102(1)(ag). This language in-cludes a land contract vendor's interest. See Edwin E. Smith, *An Introduction to Revised UCC Article 9*, in The New Article 9 Uniform Commercial Code 24 (Corinne Cooper, ed. 2000) (term "account" in Revised Article 9 includes "a right to pay-ment … for real property sold"). It is difficult, however, to see how switching a land contract vendor's interest from the "general intangible" category of collateral to an "account" could clear up controversy about whether to record such a mortgage in the county land records, or according to UCC fil-ing requirements, or both. But one other provision of Revised Article 9 lends support to the trustee's argument for UCC fil-ing.

Scholars argue that Revised Article 9 also alleviates a need to record separately a transfer of a land contract vendor's legal title in the county land records when the right to payment is transferred. See Whitman, *supra*, at 427; Nelson, *supra*, § 3:37. Revised Article 9 specifies: "Perfection of a security interest in a right to payment or performance also perfects a security in-terest in a security interest, mortgage, or other lien on per-sonal or real property securing the right." Wis. Stat. § 409.308(5). This provision creates a Revised Article 9 ana-logue to the familiar concept that the mortgage follows the note: if the lender perfects a security interest in a right to pay-ments, then it has also perfected a security interest on the lien on real property securing that right to payment. *Id.*, cmt. 6. This could apply to a mortgage on a land contract vendor's interest: if the lender perfected the mortgage, that action would also perfect a lien on the mortgage collateral, the land contract vendor's interest.

There may be a problem with this argument since a land contract vendor's interest is legal *title to* the property and not a "security interest, mortgage, or other *lien on* … real property," as Wisconsin Statutes § 409.308(5) requires. See *Greenberg*, 471 N.W.2d at 36 (contrasting mortgagee, who has a lien on real property collateral, to land contract vendor, who holds legal title to real property).

But we do not need to decide in this case whether, under Wisconsin law, UCC filing is now one effective way to perfect a mortgage on a land contract vendor's interest. What we must decide is only whether recording in the county land records remains one effective way to perfect a mortgage on a land contract vendor's interest. Our answer is yes. Revised Article 9 might make it unnecessary to record a mortgage on a land contract vendor's interest in the county land records, as it is possible that UCC filing would be sufficient. But that does not mean that recording in the county land records is not also effective. We see nothing in Revised Article 9 that restricts the scope of Wisconsin's land recording statute, which applies broadly to "every transaction by which *any interest in land* is created, aliened, mortgaged, assigned or may be otherwise affected in law or in equity." Wis. Stat. § 706.001(1). A vendor's interest includes the right to receive the land contract payments. The vendor also holds legal title to the land, and his interest therefore is "still an interest in … real estate." *Hoeppner*, 49 B.R. at 127 (internal quotation marks omitted).

There are additional indications that recording in the county land records remains effective. Scholars acknowledge that a prudent mortgagee may want to record in the county land records as well as filing under the UCC. Nelson, *supra*,

§ 3:37 ("Even though such a recording is unnecessary and irrelevant under Article 9, recording in the real estate records is important and desirable" for several reasons); Whitman, *supra*, at 428 (noting that "recording in the real estate records may be desirable for other reasons, but it is not essential to perfection"). Other provisions of Revised Article 9 also hint at the continuing validity of recording in the county land records. For example, Wisconsin Statutes §§ 409.607(2) and 409.619(2) both authorize recording certain documents in county land records to help creditors foreclose if a debtor defaults on a debt secured by real property.

There has been no signal from the Wisconsin legislature or courts that recording in the county land records is *not* effective. There are also powerful pragmatic and policy reasons to continue treating recording in the county land records as effective. As one scholar noted, in practice it "makes no sense" to require UCC filing when a mortgage lender might have no notice of a land contract's existence since land contracts are often not recorded. Nelson, *supra*, § 3:37. It would be "manifestly unfair" to hold a mortgage lender to the requirement that it record under the UCC if it does not know that a land contract is involved. *Id.* The goal of a recording or filing system is to provide "adequate public notice" of liens and security interests. *Hoeppner*, 49 B.R. at 127. It should not "create a windfall for a bankruptcy estate or a minefield for lenders." *Id.*

In short, by adopting Revised UCC Article 9 while leaving intact the broad land recording statute, Wis. Stat. 706.001, the Wisconsin legislature did not overturn *Hoeppner* on this issue. The bank properly recorded its mortgage, which could attach a lien to the Blanchards' interest as land contract vendors.

Although the bank did not perfect its security interest under UCC procedures, it did the real estate equivalent by recording its mortgage in the county land records. That action was effective to perfect its security interest.

C. *The Trustee's Strong-Arm Powers*

The trustee's interest in the land contract payments cannot take priority over the bank's earlier recorded mortgage interest. Under 11 U.S.C. § 544(a)(1), a bankruptcy trustee has "the rights and powers" of a judicial lien creditor on the property of the debtor at the commencement of the bankruptcy case. The bank's proper recording of its mortgage defeats the trustee's attempt to take the Blanchards' interest as land contract vendors under § 544(a)(1). See Wis. Stat. § 409.322(1); see also *South Milwaukee Savings Bank v. Barrett*, 611 N.W.2d 448, 450 (Wis. 2000) ("In determining priority of interests in real estate, including judgment liens, Wisconsin is a 'race-notice' state.").

Section 544(a)(3) provides similar powers, giving the trustee the position of a "bona fide purchaser of real property" from the debtor as of the commencement of the bankruptcy case. Standing in for a bona fide purchaser, the trustee would not be able to take priority over the bank's earlier-recorded mortgage. See Wis. Stat. § 706.08(1)(a) (unrecorded conveyances are void against subsequent good faith purchasers for value who record their conveyance first); *South Milwaukee Savings Bank*, 611 N.W.2d at 450.

D. *Reformation*

The trustee argues that our precedents allow a bankruptcy trustee to use his strong-arm powers based on the face of an erroneous document providing a security interest, and that courts may not reform the document to give another party

priority over the trustee. He argues that the district court thus erred by reforming the mortgage to make the land contract vendors' interest the collateral. The trustee relies on *In re Duckworth*, in which we held that parol evidence could not be used against a bankruptcy trustee to reform a security agreement that incorrectly identified the secured debt. 776 F.3d 453, 455 (7th Cir. 2014). In *Duckworth*, the creditor had no security interest in the collateral that could take priority over the bankruptcy trustee using his strong-arm powers. Stepping into the shoes of a subsequent judicial lien creditor under § 544(a)(1), the bankruptcy trustee was "entitled to rely on the text of a security agreement, despite extrinsic evidence that could be used between the original parties to correct the mistaken identification of the debt to be secured." *Id*. at 459; see also *In re Martin Grinding & Machine Works, Inc.*, 793 F.2d 592 (7th Cir. 1986) (parol evidence could not be used against trustee to reform security agreement that omitted certain collateral).

Reformation is not necessary to protect the bank's priority in this case. In this respect, we agree with the bankruptcy court. A land contract vendor's interest can secure a mortgage loan, as it did here. Since Wisconsin law recognizes mortgages on a vendor's interest in a land contract, there was no need to reform the mortgage to include a lien on "personalty." *Duckworth* and *Martin Grinding* do not apply.

For the foregoing reasons, the trustee cannot avoid the bank's valid and prior-recorded mortgage lien on the Blanchards' interest as vendors in the land contract. The grant of summary judgment in favor of Intercity State Bank is

AFFIRMED.