In re Ronald J. GRABOWSKI, Trenna R. Grabowski, Debtors.

Ronald J. Grabowski, Trenna R. Grabowski, Plaintiffs,

v.

Deere & Company, Integra Bank, South Pointe Bank, Farmers & Merchants Bank of Nashville, and Bank of America, Defendants.

Bankruptcy No. 01–40801.
Adversary No. 01–4124.

United States Bankruptcy Court, S.D. Illinois.

April 24, 2002.

Steven M. Wallace, Swansea, IL, for plaintiffs.

Mark J. Ballard, Mt. Vernon, IL, for South Pointe Bank.

Steven M. Wald, St. Louis, MO, for Bank of America.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

This case involves a priority dispute between defendants Bank of America and South Pointe Bank ("South Pointe") regarding their security interests in three items of farm equipment owned by the debtors.[1] Both lenders filed financing statements perfecting their interests. Bank of America, the first to file, described its collateral in general terms and listed the debtors' business address, rather than their home address where the collateral was located. South Pointe, by contrast, described the collateral more specifically and included the debtors' home address. South Pointe contends that Bank of America's description was ineffective to perfect the Bank's security interest in the equipment and that South Pointe has a superior interest by reason of its subsequently filed financing statement.

The facts are undisputed. In April 2001, debtors Ronald and Trenna Grabowski of Dubois, Illinois, filed this Chapter 11 proceeding to reorganize their farming operation in Washington and Perry counties, Illinois. The debtors have been engaged in farming at this location for the past 30 years. Beginning in 1993, the debtors also owned and operated a John Deere farm equipment business, Grabowski Tractor–

Benton, Inc., at 12047 Highway 37, Benton, Illinois. During this time, debtor Trenna Grabowski, a certified public accountant, moved her accounting practice to the Benton dealership. Although the dealership was sold in 1999, Trenna Grabowski continues to conduct her accounting practice from the Benton location.

The debtors' schedules include a list of items of equipment used in their farming operation. The debtors filed the present proceeding to determine the validity, priority, and extent of liens held by various lenders in this equipment. Subsequently, the lenders reached an agreement concerning their respective interests in the farm equipment with the exception of three items. (*See* Stip., Doc. No. 20, filed February 1, 2002.) These items, as to which a dispute remains between Bank of America and South Pointe, consist of a John Deere 925 flex platform, a John Deere 4630 tractor, and a John Deere 630 disk. (*See* Stip. at 3–4.)

Bank of America claims a prior security interest in this equipment by virtue of a security agreement signed by the debtors in December 1998. The Bank's financing statement, filed on December 31, 1998, identifies the debtors as "Ronald and Trenna Grabowski" and lists their address as "12047 State Highway #37, Benton, Illinois 62812." The financing statement describes the Bank's collateral as:

> All Inventory, Chattel Paper, Accounts, *Equipment* and General Intangibles[.]

(*See* Supplmntl. Stip., Doc No. 15, Ex. B, filed Jan. 22, 2002) (emphasis added).[2]

South Pointe subsequently obtained a lien on the debtors' equipment in January

---

1. The remaining defendants have entered into a stipulation determining their interests and are not involved in the present dispute. (*See* Stip., Doc No. 20, filed Feb. 1, 2001.)

2. The description of collateral in the Bank's security agreement is virtually identical.

2000. South Pointe's financing statement, filed January 18, 2000, identifies the debtors as "Ronald and Trenna Grabowski" at "P.O. Box 38, Dubois, Illinois 62831" and describes South Pointe's collateral as:

> JD 1995 9600 combine ..., *JD 925 FLEX PLATFORM* ..., *JD 4630 TRACTOR* ..., *JD 630 DISK 28' 1998* ....[3]

(*See* Supplmntl. Stip., Doc. No. 15, Ex. C, filed Jan. 22, 2002) (emphasis added).[4]

South Pointe asserts that Bank of America's financing statement, although prior in time, was insufficient to perfect the Bank's interest because it failed to place other lenders on notice of Bank of America's interest in the subject equipment. Specifically, South Pointe notes that the Bank's financing statement contained the address of the debtors' farm equipment business rather than that of the debtors' home where their farming operation is located and, further, that it failed to mention any specific items of equipment or even make reference to "farm equipment" or "farm machinery." South Pointe argues that, based on this description, a subsequent lender would reasonably conclude that Bank of America's intended security was the personal property of the debtors' business rather than equipment used in the debtors' farming operation. South Pointe maintains, therefore, that the Bank's financing statement did not reasonably identify the Bank's collateral as required to fulfill the notice function of a financing statement under Illinois' Uniform Commercial Code.

■ As a preliminary matter, the Court notes that effective July 1, 2001, Illinois adopted revised Article 9 of the Uniform Commercial Code ("UCC"). *See* 810 Ill. Comp.Stat. 5/9–101, *et seq.* (2001); *see generally* Uniform Commercial Code Comments 1–4, 810 Ill.Comp.Stat. 5/9–101, Smith–Hurd Ann. at 123–30 (West Supp. 2002). This revised Article applies to all transactions or liens within its scope, "even if the transaction or lien was entered into or created before [the statute's] effective date[.]" *See* 810 Ill.Comp.Stat. 5/9–702 (2001). Accordingly, in the present case, the Court will apply the provisions of revised Article 9 even though the parties' transactions predated the statute's effective date.

■ The UCC sets forth the requirements for a creditor to obtain and perfect a security interest in personal property of the debtor. Section 9–203 governs the attachment and enforcement of security interests through the parties' execution of a security agreement, while § 9–502 relates to the requisites of a financing statement filed to perfect the creditor's interest against the interests of third parties. Both sections call for a description of the debtor's property.[5] However, the degree

---

3. There is no dispute in this case concerning the 9600 combine referenced in South Pointe's financing statement.

4. South Pointe's security agreement describes the property subject to its lien as:
   Equipment: All equipment including ... *farm machinery and equipment*....
   The secured property includes ... the following: JD 1995 9600 COMBINE ..., JD 925 FLEX PLATFORM ..., JD 4630 TRACTOR ..., JD 630 DISK 28' 1998....
   (*See* South Pointe Proof of Claim, No. 27, Ex. 2, filed Aug. 21, 2001) (emphasis added).

5. Section 9–203 provides in pertinent part:

   (b) ... [A] security interest is enforceable against the debtor and third parties with respect to the collateral only if:

   .    .    .    .    .

   (A) the debtor has authenticated a security agreement *that provides a description of the collateral*....
   810 Ill.Comp.Stat. 5/9–203(b)(3)(A) (2001) (emphasis added) (*see* former § 9–203(1)(a), 810 Ill.Comp.Stat. 5/9–203(1)(a) (2000)).
   Section 9–502 states:

of specificity required of such description depends on the nature of the document involved—whether it is a security agreement or financing statement—and the purpose to be fulfilled by such document. *See* 9A Hawkland, *Uniform Commercial Code Series,* [Rev] § 9–108:2, at 291–92; [Rev] § 9–108:2, at 294–96 (2001). While a security agreement defines and limits the collateral subject to the creditor's security interest, a financing statement puts third parties on notice that the creditor may have a lien on the property described and that further inquiry into the extent of the security interest is prudent. *See Signal Capital Corp. v. Lake Shore Nat'l Bank,* 273 Ill.App.3d 761, 210 Ill.Dec. 388, 652 N.E.2d 1364, 1371 (1995).

Section 9–108 sets forth the test for sufficiency of a description under the UCC, stating:

> (a) ... a description of personal ... property is sufficient, whether or not it is specific, *if it reasonably identifies what is described.*

810 Ill.Comp.Stat. 5/9–108(a) (emphasis added) (2001) (*see* former § 9–110, 810 Ill. Comp.Stat. 5/9–110 (2000)). Examples of descriptions that meet this "reasonable identification" test include identification by "category" or by "type of collateral defined in the UCC." *See* § 9–108(b)(2), (3). In addition, identification "by any other method" is sufficient, "if the identity of the collateral is objectively determinable." *See* § 9–108(b)(6). Only a super-generic such as "all the debtor's assets" or "all the debtor's personal property" is insufficient under the "reasonable identification" standard of § 9–108. *See* 810 Ill.Comp.Stat. 5/9–108(c).

While § 9–108 provides a flexible standard for determining the sufficiency of a description in a security agreement, § 9–504 provides an even broader standard with regard to a financing statement. This section states:

> A financing statement sufficiently indicates the collateral that it covers if the financing statement provides:
>
> (1) a description of the collateral pursuant to Section 9–108; or
>
> (2) *an indication that the financing statement covers all assets or all personal property.*

810 Ill.Comp.Stat. 5/9–504 (2001) (emphasis added). Thus, in the case of a financing statement, a creditor may either describe its collateral by "type" or "category" as set forth in § 9–108 or may simply indicate its lien on "all assets" of the debtor.

This exceedingly general standard for describing collateral in a financing statement, which is new to the UCC under revised Article 9, is consistent with the "inquiry notice" function of a financing statement under previous law. A financing statement need not specify the property encumbered by a secured party's lien, but need merely notify subsequent creditors that a lien may exist and that further inquiry is necessary "to disclose the complete state of affairs." Uniform Commercial Code Comment 2, 810 Ill.Comp.Stat. 5/9–502, Smith–Hurd Ann. at 385 (West Supp.2002); *see Matter of Little Brick Shirthouse, Inc.,* 347 F.Supp. 827, 829 (N.D.Ill.1972); *In re Swati,* 54 B.R. 498, 501 (Bankr.N.D.Ill.1985). In the present case, Bank of America filed a financing statement indicating it had a lien on the debtors' property consisting of "all inven-

(a) ... [A] financing statement is sufficient only if it:
(3) *indicates the collateral covered by the financing statement.*

810 Ill.Comp.Stat. 5/9–502(a)(3) (2001) (emphasis added) (*see* former § 9–402(1), 810 Ill. Comp.Stat. 5/9–402(1) (2000)).

tory, chattel paper, accounts, equipment, and general intangibles." Despite the generality of the Bank's description, it was sufficient to notify subsequent creditors, including South Pointe, that a lien existed on the debtors' property and that further inquiry was necessary to determine the extent of the Bank's lien. For this reason, the Court finds no merit in South Pointe's argument that the description of the Bank's collateral was too general to fulfill the notice function of a financing statement under the UCC.

■ South Pointe asserts, however, that it was misled by the incorrect address contained in Bank of America's financing statement and "reasonably concluded" that the only equipment subject to the Bank's lien was that located at the debtors' farm equipment dealership. The Court disagrees that such conclusion was "reasonable." The debtors' business address was not part of the Bank's description of its collateral and, thus, did not serve to limit the collateral subject to the Bank's lien as South Pointe argues. In fact, Bank of America's financing statement indicated the Bank had a lien on the debtors' "equipment," with no indication that its interest was confined to equipment located in a particular place. Rather than serving to describe the Bank's collateral, therefore, the debtors' address merely provided a means by which subsequent lenders could contact the debtors to inquire concerning the Bank's lien.[6] *See* 9 Hawkland, *supra,* § 9–402:11, at 724–25.

While a subsequent creditor should not be imposed upon to be a "super-detective" in investigating prior secured transactions, the debtors' address in this case was an accurate and ready means of contacting the debtors. The Court notes, moreover, that even though the mailing address on the Bank's financing statement was that of the debtors' business, the debtors' names were listed as "Ronald and Trenna Grabowski," not "Grabowski Tractor–Benton, Inc.," the name of the debtors' business. Accordingly, the Court finds that a reasonably prudent lender would not be misled into believing that the collateral listed was property of the debtors' business, rather than that of the debtors' individually.

For the reasons stated, the Court concludes that Bank of America's financing statement was sufficient to perfect its security interest in the subject farm equipment and that the Bank's interest, being prior in time, is superior to that of South Pointe. Accordingly, the Court finds in favor of Bank of America and against South Pointe on the debtors' complaint to determine validity, priority, and extent of liens in the debtors' farm equipment.

SEE WRITTEN ORDER.

---

**6.** Bank of America points out that although former § 9–402 specified that "a mailing address of the debtor" be included as one of the requisites of a financing statement, 810 Ill. Comp.Stat. 5/9–402(1) (2000), § 9–502 of revised Article 9 does not contain such a requirement. *See* 810 Ill.Comp.Stat. 5/9–502(a) (2001). The Court notes, however, that § 9–516(b)(5)(A) specifies that a financing state-

ment that is refused by the filing officer for failure to include "a mailing address of the debtor" is ineffective. 810 Ill.Comp.Stat. 5/9–516(b)(5)(A). Accordingly, it is at least questionable whether the "mailing address" requirement has been eliminated. *See* 9B Hawkland, *supra,* [Rev] § 9:502:3, at 742, [Rev] § 9–516:3, at 841.