In the

# United States Court of Appeals
### For the Seventh Circuit

_____

No. 18-3291

IN RE: I80 EQUIPMENT, LLC,

*Debtor*,

FIRST MIDWEST BANK,

*Plaintiff-Appellant*,

*v.*

JEANA K. REINBOLD, not individually but solely in her capacity
as Chapter 7 Trustee of the Estate of I80 Equipment, LLC,

*Defendant-Appellee*.

_____

Appeal from the United States Bankruptcy Court for the
Central District of Illinois.
Nos. 18-08003 & 17-81749 — **Thomas L. Perkins**, *Chief Bankruptcy Judge*.

_____

ARGUED APRIL 9, 2019 — DECIDED SEPTEMBER 11, 2019

_____

Before KANNE, BARRETT, and BRENNAN, *Circuit Judges*.

BRENNAN, *Circuit Judge*. This interlocutory bankruptcy appeal presents a matter of first impression for our court: whether Illinois's version of Article 9 of the Uniform Commercial Code requires a financing statement to contain within

its four corners a specific description of secured collateral, or if incorporating a description by reference to an unattached security agreement sufficiently "indicates" the collateral. The bankruptcy court ruled that a financing statement fails to perfect a security interest unless it "contains" a separate and additional description of the collateral. Given the plain and ordinary meaning of the Illinois statute, and how courts typically treat financing statements, we disagree and reverse.

## I

The facts necessary to resolve this appeal are straightforward. The debtor, I80 Equipment, LLC, is a business in Illinois that purchased and refurbished trucks for resale. I80 Equipment obtained a commercial loan from First Midwest Bank. To ensure repayment, the parties executed an agreement on March 9, 2015, which granted First Midwest a security interest in substantially all of I80 Equipment's assets. These were described in twenty-six listed categories of collateral, such as accounts, cash, equipment, instruments, goods, inventory, and all proceeds of any assets.[1] To perfect its interest in I80 Equipment's assets, First Midwest timely filed a financing statement with the Illinois Secretary of State. The financing statement purported to cover "[a]ll Collateral described in First Amended and Restated Security Agreement dated March 9, 2015 between Debtor and Secured Party."

Two years later, I80 Equipment defaulted on the loan and filed a voluntary bankruptcy petition under Chapter 7. The court appointed a trustee to manage the bankruptcy assets.

---

[1] *See* Complaint for Declaratory Judgment, Exh. B at 2–4, *In re I80 Equipment*, No. 17-81749 (Bankr. C.D. Ill. 2018), ECF No. 1 (full description of collateral in the security agreement).

First Midwest sued the trustee, seeking to recover $7.6 million on the loan. It also filed a declaration that its security interest in I80 Equipment's assets was properly perfected and senior to the interests of all other claimants, including the trustee. The trustee countered that First Midwest's security interest was not properly perfected because its financing statement did not independently describe the underlying collateral, but instead incorporated the list of assets by reference to the parties' security agreement. The trustee also asserted a counterclaim to avoid First Midwest's lien pursuant to § 544(a) of the Bankruptcy Code.[2] Both parties moved for judgment on the pleadings.

The bankruptcy court agreed with the trustee and ruled that "[a] financing statement that fails to contain any description of collateral fails to give the particularized kind of notice" required by Article 9 of the UCC. With First Midwest's consent, the trustee sold the estate's assets for approximately $1.9 million and holds the net proceeds pending resolution of this dispute. The parties jointly certified under 28 U.S.C. § 158(d)(2)(A) that an immediate appeal of the bankruptcy court's decision to this court would materially advance the progress of the case, and this court granted the parties' petition.

On appeal, neither the validity of the loan nor the legitimacy of First Midwest's security interest is in question. The

---

[2] Section 544(a) of the Bankruptcy Code empowers a trustee to avoid interests in the debtor's property that are unperfected as of the petition date. 11 U.S.C. § 544(a); *see also* 4 WILLIAM L. NORTON, NORTON BANKRUPTCY LAW & PRACTICE § 63:2 (3d ed. 2019). This is commonly referred to as the trustee's "strong-arm power," which a debtor in possession can exercise under § 1107(a). *See* NORTON, *supra*, at § 63:4.

trustee maintains only that First Midwest's lien is avoidable because the financing statement failed to properly indicate the secured collateral, and First Midwest disagrees.

## II

We review de novo questions of statutory interpretation. *In re Robinson*, 811 F.3d 267, 269 (7th Cir. 2016); *United States v. Webber*, 536 F.3d 584, 593 (7th Cir. 2008). When answering a novel question of state law, we look to "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007). Here, we apply the UCC as interpreted by Illinois courts and governed by Illinois law. *See In re Blanchard*, 819 F.3d 981, 984 (7th Cir. 2016); *see also Helms v. Certified Packaging Corp.*, 551 F.3d 675, 678 (7th Cir. 2008).

In Illinois courts, statutory construction starts with the statutory language itself. *People v. Grant*, 52 N.E.3d 308, 313 (Ill. 2016). If that language—given its plain and ordinary meaning[3]—is clear and unambiguous,[4] "the court must give it effect and should not look to extrinsic aids for construction." *In re Robinson*, 811 F.3d at 269; *see also Home Star Bank & Fin.*

---

[3] We assume a word carries its everyday meaning, "unless the context counsels otherwise." *See Webber*, 536 F.3d at 593; *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 69–70 (2012). Sometimes a word may require a more technical or rare understanding, but more frequently a term takes on its natural and obvious use. *See* SCALIA & GARNER, *supra*, at 70.

[4] When interpreting the text of a statute, we start with the premise that laws generally are clear and unambiguous. *See generally* SCALIA & GARNER, *supra* note 3, at 29–40.

*Servs. v. Emergency Care & Health Org.*, 6 N.E.3d 128, 135 (Ill. 2014) (when construing a statute, "[i]t is improper for a court to depart from the plain statutory language by reading into the statute exceptions, limitations, or conditions that conflict" with the expressed text); *LaSalle Bank Nat'l v. Cypress Creek 1, LP*, 950 N.E.2d 1109, 1113 (Ill. 2011) (when plain language is "clear and unambiguous, we will apply it as written"); *Webber*, 536 F.3d at 593 ("When the plain wording of the statute is clear, that is the end of the matter.").

We can give statutes their plain and ordinary meaning by applying contemporaneous dictionary definitions, *Landis v. Marc Realty, LLC*, 919 N.E.2d 300, 304 (Ill. 2009), and by reading the statutes in their entirety. *Home Star Bank*, 6 N.E.3d at 135 (statutory "[w]ords and phrases should not be viewed in isolation, but should be considered in light of other relevant provisions of the statute"). As the Illinois Supreme Court has explained: "A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous." *People v. Perez*, 18 N.E.3d 41, 44 (Ill. 2014) (citation omitted); *see also In re Melching*, 589 B.R. 846, 848–52 (Bankr. S.D. Ill. 2018) (court considered "the entire statutory scheme" when interpreting Illinois exemption statute). We apply these principles of interpretation to the statutes in this case.

## A

At issue here is the text of Article 9 of the UCC, 810 ILL. COMP. STAT. 5/9-101, *et seq.* (2001). In relevant part, § 9-502 requires that a financing statement: (1) provide the name of the

debtor; (2) provide the name of the secured party or its representative; and (3) *indicate the collateral covered by the financing statement* (emphasis added).

According to § 9-504, "[a] financing statement sufficiently indicates the collateral that it covers if the financing statement provides: (1) a description of the collateral pursuant to Section 9-108; or (2) an indication that the financing statement covers all assets or all personal property." Section 9-108 further explains that a description of the secured property does not need to be specific but must "reasonably identif[y]" what is described. Section 9-108 gives six distinct methods by which a description of collateral reasonably identifies the secured property: (1) specific listing; (2) category; (3) type; (4) quantity; (5) mathematical computation or allocation; or (6) "*any other method, if the identity of the collateral is objectively determinable*" (emphasis added).

A financing statement that substantially satisfies these requirements is effective, even if it has minor errors or omissions that are not "seriously misleading." 810 ILL. COMP. STAT. 5/9-506(a). But if a financing statement fails these basic requirements, the lender's interests are subject to avoidance under § 544(a) of the Bankruptcy Code.

We must decide whether the statutory language of Article 9 requires that the four corners of the financing statement include a specific description of the secured collateral (either by type, category, quantity, etc.), or if incorporating such a description by reference to a security agreement sufficiently "indicates" the collateral.

The text of § 9-108 provides six ways to indicate collateral in a financing statement—including by "any other method"—

so long as the identity of the collateral is "objectively determinable." This expands the pre-2001 Article 9 requirements under which a financing statement must: (1) give the name of the debtor or the secured party; (2) be signed by the debtor; (3) include the secured party's address; and (4) *contain a statement indicating the types, or describing the items, of collateral. See* 810 ILL. COMP. STAT. 5/9-402(1) (2001) (emphasis added).

In 2001, the Illinois version of the UCC was revised to no longer require that the financing statement "contain" a description of the collateral; after revision the statement must only "indicate" collateral. Under the revisions, "[a]n indication may satisfy the requirements of Section 9-502(a), even if it would not have satisfied the requirements of former Section 9-402(1)." 810 ILL. COMP. STAT. Ann. 5/9-504 cmt. 2. This pared-down approach reflects the notice function of Article 9:

> This section adopts the system of "notice filing." What is required to be filed is not, as under pre-UCC chattel mortgage and conditional sales acts, the security agreement itself, but only a simple record providing a limited amount of information (financing statement). … The notice itself indicates merely that a person may have a security interest in the collateral indicated. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs.

810 ILL. COMP. STAT. Ann. 5/9-502 cmt. 2 (emphasis added).[5] With this context, the ordinary meaning of "indicate" is to

---

[5] This comment sheds light on the scope of the statute: to provide notice to third parties of any security interest that exists, or may exist in the

serve as a "signal" that "point[s] out" or "direct[s] attention to" an underlying security interest.[6] That plain reading of the text allows a party to "indicate" collateral in a financing statement by pointing or directing attention to a description of that collateral in the parties' security agreement.

This interpretation reflects how we and other courts have understood the UCC's notice function. For example, we have recognized that Article 9 ensures "adequate public notice" of liens and security interests, *In re Blanchard*, 819 F.3d 981, 988

---

future, in the described collateral. The statute does not state whether a security agreement should be attached to a filed financing statement, but it does note that the security agreement itself need not be filed, and that the financing statement is only a simple record of the security agreement with a limited amount of information. Under § 9-210(a)(3), the debtor may provide its lender with a list of what the debtor believes to be the collateral securing the lender's interest and request that the lender approve or correct it within 14 days. The lender is neither required nor precluded from sending the underlying security agreement, as the purpose of the request is merely to provide "information" to the debtor about his secured obligations. *See* 810 ILL. COMP. STAT. Ann. 5/9-210 cmt. 2.

[6] Webster's defines indicate as: (1) "to direct attention to; point to or point out; show"; (2) "to be or give a sign, token, or indication of; signify; betoken"; (3) "to show the need for; call for; make necessary"; (4) "to point to as the required treatment"; (5) "to express briefly or generally." *Indicate*, WEBSTER'S NEW WORLD COLLEGE DICTIONARY (4th ed. 2001). American Heritage Dictionary defines the term as: (1) "[t]o show the way to or the direction of; point out"; (2) "[t]o serve as a sign, symptom, or token of; signify"; (3) "[t]o suggest or demonstrate the necessity, expedience, or advisability of"; (4) "[t]o state or express briefly." *Indicate*, THE AMERICAN HERITAGE DICTIONARY (4th ed. 2000). And Merriam-Webster's defines indicate as: (a) "to point out or point to"; (b) "to be a sign, symptom, or index of"; (c) "to demonstrate or suggest the necessity or advisability of"; (d) "to state or express briefly." *Indicate*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003).

(7th Cir. 2016), and that "the goal of the filing system is to make known to the public whatever outstanding security interests exist in the property of debtors." *Id.* at 986 (citing *In re Hoeppner*, 49 B.R. 124 (Bankr. E.D. Wis. 1985)); *see also Helms v. Certified Packaging Corp.*, 551 F.3d 675, 679 (7th Cir. 2008) ("The purpose of the financing statement is to put third parties on notice that the secured party who filed it may have a perfected security interest in the collateral described, and that further inquiry into the extent of the security interest is prudent.") (citations and quotations omitted); *In re Grabowski*, 277 B.R. 388, 391 (Bankr. S.D. Ill. 2002) (holding the same). This is so Article 9 does not "create a windfall for a bankruptcy estate or a minefield for lenders." *In re Blanchard*, 819 F.3d at 988–89 (citation omitted).

The financing statement itself is an "abbreviation of the security agreement." *Helms*, 551 F.3d at 679. "It is a streamlined paper to be filed for the purpose of giving notice to third parties of the essential contents of the security agreement." *Id.* (citation omitted); *see also Grabowski*, 277 B.R. at 391 (financing statement not required to share same level of detail as security agreement).

The security agreement defines and limits the collateral, while the financing statement puts third parties on notice that a creditor may have an existing security interest in the property and further inquiry may be necessary. *In re Grabowski*, 277 B.R. at 391. In recognizing this distinction between financing statements and security agreements, this court has said:

> The purpose of the financing statement is to place would-be subsequent creditors on notice that a creditor has a security interest in the debtor's property; it is the security agreement …

> that defines that interest and by defining limits it. … The security agreement embodies the intention of the parties and is the document which creates the security interest. … The financing statement on the other hand need not particularize in detail the collateral secured under the security agreement because in accordance with the "notice filing" concept adopted under the [UCC] a financing statement serves to give notice that the secured party who filed may have a security interest in the collateral and that further inquiry with respect to the security agreement will be necessary to disclose the complete state of affairs.

*Helms*, 551 F.3d at 680 (citations and quotations omitted). "Hence less detail is required in the financing statement." *Id.*

While financing statements and security agreements both must describe the collateral, "the degree of specificity required of such description depends on the nature of the document involved—whether it is a security agreement or a financing statement … ." *In re Grabowski*, 277 B.R. at 390–91. The "prudent potential creditor would [] request[] a copy of the security agreement," *Helms*, 551 F.3d at 680, and "need look no further than the security agreement" to resolve questions about the adequacy of the collateral description. *Id.* at 681. The different treatment of these two documents highlights the distinct function each serves under Article 9: the financing statement provides notice of an underlying security interest, while the security agreement creates and specifically defines that interest.

**B**

Bankruptcy courts for all three districts in Illinois have recognized this distinction and have noted that incorporation by reference is an available method for describing collateral. The Southern District of Illinois bankruptcy court has held that a financing statement was sufficient to perfect a bank lender's interest "[d]espite the generality of the Bank's description" of collateral. *In re Grabowski*, 277 B.R. at 392. In *Grabowski*, Bank of America filed a financing statement indicating it had a lien on the debtor's property consisting of "all inventory, chattel paper, accounts, equipment, and general intangibles." *Id.* at 391-92. The court rejected the subsequent creditor's argument that the description was "too general," finding it still "fulfill[ed] the notice function of a financing statement under the UCC," even though the financing statement misstated the debtor's property address and did not otherwise specifically identify the security interest. *Id.* at 392. The court noted that "only a super-generic" description—such as "all the debtor's assets" or "all the debtor's personal property" without any limiting factor—is insufficient under the reasonable identification standard of § 9-108. *Id.* at 391. The court found "[t]his exceedingly general standard for describing collateral in a financing statement" reflects the traditional notice function a financing statement was designed to serve. *Id.*

The Central District of Illinois bankruptcy court in *In re Duesterhaus Fertilizer* ruled that a financing statement with a collateral description incorporated by reference to the previous financing statement was insufficient under Article 9 because the previous statement had lapsed. 347 B.R. 646 (Bankr. C.D. Ill. 2006). The new financing statement included "no indication of collateral whatsoever," and even the reference to

the previous, lapsed statement did not specify that a description of the collateral subject to the security interest could be found there. *Id.* at 650. Even so, the court embraced incorporation by reference as an available method for indicating collateral, at least in new or "continuing" financing statements: "Absent an express state law requirement that the continuation statement contain a description of collateral, reference to another document in the same public record would appear to meet the notice requirements." *Id.* at 651.

Two years before *In re Duesterhaus*, the bankruptcy court for the Northern District of Illinois suggested incorporation by reference may satisfy the UCC's collateral description requirements for financing statements. *In re Macronet Group, Ltd.*, 2004 WL 2958447 (Bankr. N.D. Ill. 2004). Ultimately the court held that the lender's security interest failed to attach to the debtor's collateral. *Id.* at *5. But that decision was based on the absence of an authenticated underlying security agreement from which the identity of the collateral could be objectively determined, not the lender's choice to indicate the collateral by reference to the agreement. *Id.* ("[I]t may be true that incorporating a collateral description in a separate document, such as a form financing statement, by reference into a security agreement could qualify as 'any other method' of identification pursuant to UCC section 9-108 … .").

The approach of these courts to financing statements supports the conclusion that incorporation by reference is permissible in Illinois as "any other method" under § 9-108, so long as the identity of the collateral is objectively determinable. That requirement is met here by the security agreement's detailed list of the collateral. The financing statement covers:

"All Collateral described in First Amended and Restated Security Agreement dated March 9, 2015 between Debtor and Secured Party." There is no dispute that the financing statement names (as terms defined earlier in the document) both the debtor (I80 Equipment) and the secured party (First Midwest). The statement has not lapsed and includes the date and precise title of the underlying document. It describes the security interest by referencing "[a]ll [c]ollateral" as described in the underlying security agreement between the parties. For its part, the security agreement references twenty-six independent categories of collateral covered by the agreement, including accounts, cash, equipment, goods, financial assets, deposits, investments, instruments, inventory, and all proceeds of any assets. Although a subsequent creditor is not expected to be a "super-detective" while investigating prior secured transactions, *In re Grabowski*, 277 B.R. at 392, the financing statement in this case "notif[ied] subsequent creditors that a lien may exist and that further inquiry [was] necessary to disclose the complete state of affairs." *Id.* at 391 (quotations omitted).

## III

The plain and ordinary meaning of Illinois's revised version of the UCC allows a financing statement to indicate collateral by reference to the description in the underlying security agreement. This interpretation is reinforced by how Illinois bankruptcy courts construe these statutes. For these reasons, we hold that the trustee is not entitled to avoid First Midwest's lien under the Bankruptcy Code.

We REVERSE and REMAND for further proceedings in the bankruptcy court.